STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOHN J. VOGEL, DEFENDANT-APPELLANT.

Argued October 20, 1964—Re-argued February 16, 1965—
Decided July 12, 1965.

*Mr. Thomas L. Yaccarino,* Assistant County Prosecutor, argued the cause for respondent (*Mr. Vincent P. Keuper,* Monmouth County Prosecutor, attorney).

*Mr. Paul L. Blenden* argued the cause for appellant.

The opinion of the court was delivered by

HANEMAN, J. Defendant John J. Vogel was convicted by a jury in the Monmouth County Court of robbery in violation of *N. J. S.* 2A :141–1. He was acquitted of the additional charge of armed robbery, *N. J. S.* 2A :151–5. His appeal to the Appellate Division was certified by this Court on its own motion. *R. R.* 1 :10–1.

On March 1, 1962 Joseph Maurice and Angelo Liberti were wounded by police gunfire and apprehended during an armed robbery of a jewelry store in Asbury Park. Both these men allegedly implicated Vogel as a participant in the criminal act (*i. e.,* as the driver of the get-away car). The defendant was, prior to and after the robbery, employed as a stable boy at the Race Track in Laurel, Maryland. As a result of a police teletype sent on March 7, 1962, he was picked up in Maryland by the State Police on March 10. The Asbury Park police were notified of his apprehension and three of their men, armed with a complaint and warrant, proceeded to Maryland to obtain custody of him. He was duly taken before a Circuit Court Judge in Waterloo, Maryland, where he waived extradition and was turned over to the Asbury Park authorities.

The four drove back to Asbury Park that evening (Saturday), arriving about 9:30 P. M. Vogel was at least informally interrogated during the trip. Upon arrival in Asbury Park he was given permission to make a telephone call to his stepfather, during which call he admittedly asked his stepfather to get him a lawyer. He was then booked and placed in a cell. No questioning took place on Sunday. On Monday morning (March 12) at about 9 A. M. he was taken before a magistrate for a preliminary hearing. He was advised of his right to counsel and his other constitutional rights by the magistrate and, after indicating that he wished to make arrangements through his family to be represented by counsel, the hearing was adjourned for three days. Vogel was then taken upstairs, was permitted to make a telephone call to his brother, and was then subjected to questioning by several members of the Asbury Park Police Department. The questioning continued for at most an hour and a half, when it was interrupted by the appearance of Maurice (in the presence of another police officer) who had requested permission to talk to Vogel. The record discloses that this action on the part of Maurice was undertaken of his own volition and neither induced nor suggested by the police. The former stated, "Tell the truth. We

have told the truth. Every man for himself." Immediately thereafter (*i. e.*, at 10:55 A. M.), without further police interrogation or inducement, Vogel volunteered to give the police the statement later admitted at his trial in which he admitted his participation in the robbery scheme as the driver of the get-away car, and that he "took it they [his colleagues] were" armed. There is uncontroverted testimony that the defendant was advised of his right to remain silent before he confessed.

Following the transcription of this statement, defendant was given a preliminary hearing before the same magistrate who had granted a postponement earlier that morning. He was held over for the Monmouth County Grand Jury and was remanded to jail because of his inability to post bail. An indictment was returned against him on April 30, 1962, at which time he was also arraigned. At the arraignment he pleaded not guilty. The judge inquired whether he had counsel and upon being informed that he neither had private counsel nor the funds to retain counsel, assigned an attorney to represent him.

At the trial the defendant claimed ignorance of the criminal intent of his friends, but did not deny driving with them from New York to Asbury Park, and waiting for them in the car while they took care of some "business." After the shooting started he stated that he drove back to New York and eventually returned to Maryland. The incriminating evidence introduced against him consisted primarily of (1) his confession, and (2) the implicatory testimony of Maurice, who was still awaiting sentencing at the time of trial.

I.

Defendant argues that his confession was inadmissible because it was elicited by the police after the proceedings had become accusatorial and he was interrogated without the assistance of counsel, relying upon *Massiah v. United States,* 377 *U. S.* 201, 84 *S. Ct.* 1199, 12 *L. Ed.* 2d 246 (1964), and *Escobeda v. Illinois,* 378 *U. S.* 478, 84 *S. Ct.* 1758, 12 *L. Ed.*

2d 977 (1964). While it is true that the defendant had been interrogated by the police after his arrest, his incriminatory statement was not elicited by police questioning. He concedes that his confession was precipitated by "the advice of his co-defendant," and admits that the statement was given only after his conversation with Maurice. In this respect the statement was unsolicited and spontaneous rather than elicited or the product of police questioning.

In these circumstances there is no basis to invoke either *Massiah* or *Escobedo*.

## II.

Defendant complains that counsel was not assigned to represent him until after his arraignment on the indictment, and that this, in and of itself, violated his constitutional right to counsel. *New Jersey Constitution of 1947, Art. 1, par. 10.* We disagree.

The right to counsel "at every significant stage of the criminal proceeding," *Jenkins v. State,* 57 *N. J. Super.* 93, 121 (*App. Div.* 1959), reversed on other grounds 32 *N. J.* 109 (1960), means at all stages in a criminal proceeding "where events transpire that are likely to prejudice his ensuing trial." *DeToro v. Pepersack,* 332 *F. 2d* 341, 343 (4 *Cir.* 1964). The question, therefore, turns upon whether anything happened at defendant's arraignment which did, or thereafter could, prejudice his right or ability to defend on the merits. As stated by Judge Gaulkin in *State v. Kirkland,* 82 *N. J. Super.* 409, 413 (*App. Div.* 1964) : "* * * under our practice an arraignment at which defendant pleads not guilty is not, *per se,* a critical stage in a criminal proceeding * * *." The sole function of an arraignment in New Jersey is to advise the defendant of the charges against him and to have him plead thereto, *R. R.* 3:5-1. By entering a plea of not guilty at that stage in the criminal proceedings a defendant does not adversely affect or prejudice any trial tactics or strategy which might best serve his cause. It is on this ground that the defendant's reliance on *In re Application of Palumbo,* 58

*N. J. Super.* 80 (*App. Div.* 1959), *cert.* denied 368 *U. S.* 905, 82 *S. Ct.* 184, 7 *L. Ed.* 2d 99 (1961), is inapposite. While that case does indicate that an indigent is entitled to advice from counsel on deciding how to plead to an indictment, *id.,* 58 *N. J. Super.,* at *p.* 88, *Palumbo* involved a situation where the defendant pleaded *guilty* to the indictment. In such a situation it is true that the law of this State requires that counsel be present, unless that right is waived, because such an uncounseled act can directly prejudice and adversely affect the trial of his case. See *Jenkins v. State, supra,* 57 *N. J. Super.,* at *p.* 108; *In re Garofone,* 80 *N. J. Super.* 259, 277 (*Law Div.* 1963), affirmed 42 *N. J.* 244 (1964). *Cf. State v. Dennis,* 43 *N. J.* 418, 426–427 (1964); *State v. Jackson,* 43 *N. J.* 148, 165–166 (1964).

█ The decisions of the United States Supreme Court are in accord with this position. See *Hamilton v. State of Alabama,* 368 *U. S.* 52, 82 *S. Ct.* 157, 7 *L. Ed.* 2d 114 (1961), and *White v. State of Maryland,* 373 *U. S.* 59, 83 *S. Ct.* 1050, 10 *L. Ed.* 2d 193 (1963), considered in conjunction with *Gideon v. Wainwright,* 372 *U. S.* 335, 83 *S. Ct.* 792, 9 *L. Ed.* 2d 799 (1963), making the standard of those cases applicable in noncapital state proceedings as well as federal. Those two cases, when considered together, stand for the proposition that if valuable defenses or other rights may be lost by a failure to raise them at a certain stage, counsel must be present.

In the case *sub judice* the defendant entered a plea of not guilty at his arraignment. No rights were lost by him by that plea or by his failure to take any step at that time. Under these facts, he has not been deprived of any right guaranteed him either by the Federal Constitution or the State Constitution.

### III.

We have considered all other grounds for reversal urged by the defendant and find them to be so without merit as not to warrant discussion.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.