Donald MacLEOD

v.

**GREAT NORTHERN PAPER COMPANY et al.**

Supreme Judicial Court of Maine.

Aug. 3, 1970.

Paine, Cohen & Lynch, by William S. Cohen and Allan Woodcock, Jr., Bangor, for plaintiff.

Mitchell & Ballou, by James E. Mitchell, John W. Ballou, Bangor, James R. Desmond, Portland, for defendants.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

WILLIAMSON, Chief Justice.

The petitioner MacLeod appeals from a decision of the Industrial Accident Commission denying workmen's compensation from his employer, the respondent Great Northern Paper Company.

The appellant in his brief "contends that the Commission erred in finding that no causal relationship existed between the accident on December 6, 1967 and his disability following a spinal fusion in April,

1968 for the following reasons: (a) The Commission disregarded evidence which had probative force in favor of Appellant; (b) The Commission relied upon hearsay evidence; (c) The Commission applied an erroneous test to determine causal relationship between an accident and resulting disability."

The basic issue is whether the decree of the Commission is supported by some competent evidence. If so, the decree is final.

"(The Commissioner's) decision, in the absence of fraud, upon all questions of fact shall be final. * * *" 39 M.R.S.A. § 99.

"39 M.R.S.A. § 99 provides in part that a decision of the Commission 'in the absence of fraud, upon all questions of fact shall be final.' We look only to see if the decision rests on some legally competent and probative evidence and is not merely the result of speculation, conjecture or guesswork." Bradbury v. General Foods Corporation, Me., 218 A.2d 673, 674; Goldthwaite v. Sheraton Restaurant et al., 154 Me. 214, 145 A.2d 362; Bernier v. Coca-Cola Bottling Plants, Inc., Me., 250 A.2d 820.

The claimant for workmen's compensation has the burden of proof on all essential elements. White v. Monmouth Canning Company, Me., 228 A.2d 795. He must establish a causal relation between the accident and the disability. Baker's Case, 143 Me. 103, 55 A.2d 780. He need not, however, prove that the accident was the sole proximate cause of the disability. It is sufficient if he proves that a pre-existing condition was accelerated or aggravated by a work connected accident. Patrick v. J. B. Ham Co., 119 Me. 510, 111 A. 912, 13 A.L.R. 427; Matriciano v. Profenno, 127 Me. 549, 143 A. 270. "This is sometimes expressed by saying that the employer takes the employee as he finds him." 1 Larson Workmen's Compensation § 12.20, p. 192.23. Causation is a fact to be found by the Com-

mission. Houle v. Tondreau Bros. Co. and Aetna Casualty & Surety Co., 148 Me. 189, 91 A.2d 481. We summarize the evidence:

On December 6, 1967 while he was unloading his large tool box in the course of a company inspection of his tools, the appellant's back "began to bother him," and he felt "a single twinge." He was given a muscle relaxant pill at the first aid room. "Probably an hour after I had that the pain was gone from my back so that I was able to continue normal operation." He lost no time from work.

The appellant had had back trouble for ten years, said to have been caused by osteoarthritis preexisting the December 6, 1967 incident. Prior to that date there was a history of several incidents of back pain, described as "episodes" or "upsets."

After consulting Dr. Hamlin, the mill doctor, the appellant consulted Dr. Leonard of Portland who recommended conservative treatment prescribing exercises to strengthen the back and suggested he wear a lumbosacral corset. He continued with his usual duties without loss of time until the operation in late April 1968.

Between his first visit to Dr. Leonard and late April 1968 he had another of "those upsets," in his words, or "one episode of low back pain while wearing (the corset)," in the words of the doctor.

On his return to Dr. Leonard, it was decided that he should undergo surgery for a "low back fusion" for "more permanent control of his pain." The operation was "elective" on the part of the appellant in the sense that it was indicated as a proper treatment for relief, but was not required.

Dr. Leonard also testified:

"Q Within a degree of medical certainty do you believe that the stooping over and getting up as referred to as happening in December 1967 could have lighted up this man's preexisting condition of osteoarthritis?

"A Yes, I believe it could have and brought him to neurosurgical evaluation and my further evaluation."

The Commission in its decree said, in part:

"The evidence leads us to the conclusion that the surgery performed by Dr. Leonard was for the purpose of relieving the painful symptoms, of osteoarthritis affecting Mr. MacLeod's spine. This osteoarthritis did not result from the incident on December 6, 1967, but was present for a long time before that date. Although the activity on December 6, 1967, may have aggravated the existing osteoarthritis and thereby produced increased pain, it soon subsided to the level that existed before December 6, 1967. According to Dr. Leonard's testimony, Mr. MacLeod had low back pain for ten years prior to the time he saw Dr. Leonard.

"We find that the back condition treated by Dr. Leonard was not the result of an accidental injury while at work on December 6, 1967 and we find that the surgery in April 1968, was not made necessary to any significant degree by the activity involved in emptying and reloading the tool box on December 6, 1967. The Petition for Award is, for that reason hereby dismissed."

■■ First: We are fully satisfied that the Commission did not disregard evidence of probative force in favor of the appellant. It would serve no useful purpose to rehearse in detail the history of the appellant's arthritic condition over a period of several years. There was competent evidence from which the Commission could find, as it did find, that the appellant's pain soon subsided to the level that existed before December 6, 1967.

■ Second: Dr. Hamlin, called by the respondent, saw the appellant following the December 6 incident. He also testified of the history of the back condition

of the appellant from 1957 to date largely from medical records, not based on the doctor's examination of the appellant. The old history was discussed by the witness with the appellant and not denied by him. There were admittedly incidents other than that of December 6 involving the appellant's back. Insofar as the testimony of Dr. Hamlin was hearsay, it corroborated the appellant's record, and in any event it was not essential to the findings of the Commission. Goldthwaite v. Sheraton Restaurant et al., supra.

■ Lastly, it is urged that the Commission in finding that "the surgery in April 1968 was not made necessary to any significant degree by the activity" of December 6, 1967, did not apply the correct rule of law. "Not made necessary to any significant degree" means, in our view, "not caused" within the meaning of causation at law.

This meaning is consistent with the Commission's decision. The principle of Law was not uncertain. It was the application of the Law to the facts found that presented the problem. There is, in our view, no sound reason to imply that the Commission did not know and apply the appropriate rule of law. "Significant" is defined in Webster's Third New International Dictionary as follows: "1: Having meaning: esp: full of import * * * 2a: suggesting or containing some concealed, disguised or special meaning: * * *"

Without doubt, the painful incident in December 1967 as one of a series of like episodes with the history of recurring pain had a bearing on the appellant's decision to undergo surgery. Taken in this light, the "personal injury by accident arising out of and in the course of his employment" did not cause the operation. 39 M.R.S.A. § 51. The Commission found, as

we read the record, that the appellant had osteoarthritis; that from time to time he had a recurrence of pain; that one such episode was induced by the incident of December 6, 1967; that the force of the incident had been expended; and that in April 1968 on the total history of his condition and with the likelihood in mind of further difficulties, he elected surgery.

For "significant" in other settings see the following: In Beaulieu v. Beaulieu, Me., 265 A.2d 610, 616, 617, in applying in tort the rule "of most significant contacts and relationships," we said, "[Maine's] governmental interest is of major significance. Thus, the rights and liabilities of the parties should be determined by the law of Maine, which has the more significant contacts and more substantial relationships to the parties and the occurrence and the more important governmental interests in the solution of the issue before the Court." Reynolds v. Sims, 377 U.S. 533, 577, 84 S.Ct. 1362, 1390, 12 L.Ed.2d 506 (state legislative reapportionment—use of political subdivision lines): "To do so would be constitutionally valid, so long as the resulting apportionment was one based substantially on population and the equal-population principle was not diluted in any significant way"; Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446, June 22, 1970 [6-man jury], "We conclude, in short, as we began: the fact that the jury at common law was composed of precisely 12 is an historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics'"; Kilgarlin v. Martin, 252 F.Supp. 404 (U.S.D. C.S.D.Tex.) (reapportionment-accepting Webster's definition of "significant").

In State v. Vogel, 45 N.J. 400, 212 A.2d 560, in holding that arraignment at which defendant pleads not guilty is not, per se, a critical stage in a criminal proceeding within the rule that accused has right to

counsel at critical stage in criminal proceeding, the Court said, 212 A.2d at p. 562:

"The right to counsel 'at every significant stage of the criminal proceeding,' Jenkins v. State, 57 N.J.Super. 93, 121, 154 A.2d 29, 45 (App.Div.1959), reversed on other grounds 32 N.J. 109, [160 A.2d 25] (1960), means at all stages in a criminal proceeding 'where events transpire that are likely to prejudice his ensuing trial.' DeToro v. Pepersack, 332 F.2d 341, 343 (4 Cir. 1964)."

We cannot say that the Commission erred in finding that the incident of December 6, 1967 did not cause the later disability in April 1968 resulting from the operation.

The entry will be

Appeal denied. Ordered that an allowance of $350 to cover fees and expenses of counsel plus cost of the record be paid by the employer to the employee.