**Joseph MADORE**

v.

**BANGOR ROOF & SHEET METAL COMPANY.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1981.

Decided April 30, 1981.

---

Joseph T. Walsh, Jr. (orally), Bangor, for plaintiff.

Mitchell & Stearns, Peter M. Weatherbee (orally), Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

CARTER, Justice.

■ Joseph Madore appeals from the pro forma decree affirming two decisions of the Workers' Compensation Commission: 1) finding Madore to be 30% partially disabled on Bangor Roof & Sheet Metal Company's Petition for Review of Incapacity; and 2) dismissing [1] Madore's Petition for Award of Compensation for injuries allegedly sus-

---

1. When a petition is decided on its merits, as was this Plaintiff's, it would be better form to deny, rather than to dismiss, the petition.

*Wing v. A. C. Electric Corp.*, Me., 408 A.2d 1006, 1007 n.1 (1979).

tained by Madore to his left foot. Madore contends on appeal that the Commissioner's findings are not supported by competent evidence, and that the Commissioner abused his discretion by not permitting Madore to recall a witness. We affirm the judgment.

## I. Madore's Petition for Award of Compensation

On August 29, 1977, Madore, while working as a roofer for Bangor Roof & Sheet Metal Company (hereafter "Bangor Roof"), fell approximately fifteen feet through roof decking onto a cement floor. Madore and Bangor Roof signed an agreement for payment of compensation for total incapacity on September 23, 1977.[2] On August 17, 1978, Bangor Roof filed a Petition for Review of Incapacity. On January 30, 1979, Madore filed a Petition for Award of Compensation.[3]

On the day of the accident, Madore was examined by Dr. James Izzard, at which time he complained only of neck and shoulder pain. Dr. Izzard testified that on September 2, 1977, he again saw Madore, at which time Madore complained of heel pain. Dr. Izzard noted that while the heel was tender, it was not swollen. Dr. Izzard testified that he saw Madore three more times in September; Madore next mentioned a heel problem on the third visit (September 28). An x-ray revealed a fracture of the proximal fifth metatarsal of uncertain age, and the radiologist's report stated that mild swelling was present, indicating that the fracture may have been subacute. Dr. Iz-

zard, though not a radiologist, testified that "subacute" would mean that the fracture was at least two weeks old, and might be of long-standing duration without union. He also testified that "usually" a fracture is accompanied by initial swelling. When asked if in his opinion the accident caused the fracture, Dr. Izzard noted that Madore was not bedridden after the accident, and stated: "So my opinion would be it would be certainly possible if that's an opinion. I don't know if you can say he probably did it in the accident or not."

Dr. John McGinn examined Madore on November 30, 1977, June 7, 1978, and September 21, 1978. Dr. McGinn had no record of any complaint as to the left foot. Dr. Rowland Pritchard saw Madore four times in 1977, and nearly every month in 1978. On January 24, 1979, Madore first voiced his complaints of pain in his left foot.

Madore first testified on October 3, 1978. When asked what part of his body was injured, he indicated the left shoulder and neck area, and the left arm and hand. Madore testified again on July 18, 1979. He stated that on the day of the accident he complained of foot pain, and that Dr. Izzard checked his feet. He said that on all three visits to Dr. McGinn he complained of foot pain, and that on his first visit to Dr. Pritchard, he complained of foot pain. Madore further testified that throughout the period following the accident his foot problem had hindered his walking. Moreover, he stated that while he was testifying in

2. Notice of approval of the agreement by the Workers' Compensation Commission was sent on March 6, 1978.

3. The September 23, 1977 Agreement recites that Madore "sustained cuts and various bruises." (Cf. 1979 Workers' Compensation Commission Rules and Regulations 2(b): "The injured member, etc., should be clearly identified on Agreements.") Madore's January 30, 1979 Petition alleges that Madore "injured neck, shoulder, elbow and left foot." Subsequently, at the hearing held on July 18, 1979, the parties told the Commissioner that Madore's Petition was filed to cover injuries to the left foot which had not been covered by the initial agreement. Without objection, the Commissioner: 1) treated the neck and shoulder injuries as having

been covered by the initial agreement; thus, his decision on Bangor Roof's Petition for Review recites that Madore sustained a compensable injury to his neck and shoulder on August 29, 1977; and 2) treated Madore's Petition as alleging a compensable injury only to Madore's left foot. Neither party on appeal complains about this treatment. Thus, as a result of the procedure adopted by the parties, Madore had the burden of proving a causal relation between the accident and his alleged left foot injury, see MacLeod v. Great Northern Paper Co., Me., 268 A.2d 488, 489 (1970), while Bangor Roof had the burden of proving that Madore's incapacity due to his neck and shoulder injuries had diminished, see Hafford v. Kelly, Me., 421 A.2d 51, 53 (1980).

October of 1978, his foot had felt like it was "on fire," but he did not then mention it.

The Commissioner found that "the injury allegedly sustained by Joseph Madore to his left foot was not causally related to his work incident of August 29, 1977."

Madore did not ask the Commissioner to make specific factual findings and conclusions of law pursuant to 39 M.R.S.A. § 99. Therefore, we must treat the Commissioner as having made whatever factual determinations could, in accordance with correct legal concepts, support his ultimate decision, and sustain such determinations unless they are clearly erroneous. *Chase v. White Elephant Restaurant*, Me., 418 A.2d 175, 175–76 (1980).

■ The issue of causal connection is itself one of fact. *Sadler v. Georgia-Pacific Corp.*, Me., 382 A.2d 1043, 1044 (1978). On his Petition for Award of Compensation, Madore had the burden of proof on this issue. *MacLeod v. Great Northern Paper Co.*, Me., 268 A.2d 488, 489 (1970); see note 3, *supra.*

■ The Commissioner could rationally have disbelieved Madore's testimony: the testimony of all three doctors as to if and when Madore complained of foot pain was in conflict with Madore's statements. The Commissioner could rationally have found improbable Madore's testimony that when he first testified his foot felt as if it were on fire, in light of Madore's failure at that time to indicate that he had any foot complaints. *See MacKenzie v. H. Tabenken & Company, Inc.*, Me., 382 A.2d 1047, 1050–51 (1978); *see also Qualey v. Fulton*, Me., 422 A.2d 773, 776 (1980). Since resolving the question of Madore's credibility against Madore finds rational support in the record and favors the Commissioner's decision, we must so resolve it. *Gordon v. Colonial Distributors*, Me., 425 A.2d 625, 628 (1981); *Chase*, 418 A.2d at 175–76.

It is undisputed that Madore did have a fractured foot on September 28, 1977. The Commissioner could rationally have found that the fracture occurred after the accident. Dr. Izzard testified that swelling usually accompanies a fracture, yet no swelling was noted by him on September 2, 1977. He refused to testify, even when invited to do so, that it was more probable than not that the accident caused the fracture.

Again, the Commissioner could rationally have found that the fracture occurred before the accident. Dr. Izzard testified that it might be of long-standing duration. By disbelieving Madore, and accepting the testimony of the doctors, the Commissioner could find that aside from tenderness and mild swelling in September, 1977, perhaps caused by the fall, Madore complained to no one of foot pain until January, 1979. At that time, he complained of pain to Dr. Pritchard, who simply took an x-ray which substantiated the existence of the fracture but revealed no other symptoms or injury. The Commissioner could thus disbelieve Madore and find that any exacerbation of the fracture caused by the accident disappeared after September of 1977, and that the fracture itself, the "injury allegedly sustained by … Madore to his left foot," occurred before the accident.

■ While it might be that we would also affirm a finding that Madore's left foot injury *was* causally related to his accident, we cannot overturn the Commissioner's fact-finding simply because an alternative finding also finds support in the evidence. *See Harmon v. Emerson*, Me., 425 A.2d 978, 982 (1981). The Commissioner's finding of no causal relationship is not clearly erroneous.

## II. *Bangor Roof's Petition for Review of Incapacity*

After the accident, Madore complained of pain in his left shoulder, neck and back. Surgery was performed on January 20, 1978 —Dr. Pritchard performed a resection of the left clavicle designed to relieve shoulder pain. Dr. McGinn examined Madore in June and September, 1978. On both occasions, after examination, Dr. McGinn concluded that Madore "could probably return to his regular work."

Dr. Pritchard testified that in September of 1978 he advised Madore that he could do "light duty work such as driving a light pick-up truck, something of that nature; ·but I didn't think that he should go back to his original job with the roofing company ...."

Madore testified in July, 1979, that he had not looked for work.

The Commissioner found that Madore was 30% partially disabled and had not made a reasonable effort to obtain work within the tolerance of his physical condition.

■ The extent of an employee's incapacity is a question of fact. *DeRoche v. Bangor Roofing and Sheet Metal Co.*, Me., 411 A.2d 1026, 1027 (1980). Where total incapacity has been established through a Commission-approved compensation agreement, the employer has the burden of showing, on a petition for review of incapacity, that the employee's incapacity has diminished since the time the agreement was executed. *Hafford v. Kelly*, Me., 421 A.2d 51, 53 (1980). The employer is required to establish, by comparative medical evidence, that since the time an approved agreement was executed, the condition of total incapacity has diminished or ended. The requirement of comparative medical testimony to show a change in condition is met by a showing that after execution of the compensation agreement the employee has undergone serious remedial surgery followed by a new medical appraisal of his condition. *Hamilton v. Dexter Shoe Co.*, Me., 402 A.2d 854, 855–56 (1979).

■ Here, the agreement for compensation for total incapacity was executed on September 23, 1977. Serious remedial surgery took place on January 20, 1978, which was followed by medical appraisals by Dr. McGinn and Dr. Pritchard. Their testimo-

ny provides competent evidence to support a finding that Bangor Roof met its burden to show that it is more probable than not that Madore has recovered some ability to perform a kind of work ordinarily available for remuneration in the competitive labor market. *See Ibbitson v. Sheridan Corp.* Me., 422 A.2d 1005, 1008 (1980). Since Madore produced no evidence that he engaged in any work search, Bangor Roof has met its burden of proving that Madore's incapacity is no longer total. *Id.* The Commissioner's finding that Madore is 30% partially disabled is not clearly erroneous.

### III.  *Commissioner's Refusal to Allow Recall of Dr. Pritchard*

■ Madore argues that the Commissioner refused to allow him to recall Dr. Pritchard to testify. The record does not reflect any such request by Madore or ruling by the Commissioner.[4] Bald factual assertions in a brief are not appropriate substitutes for the record on appeal. *State v. Lang*, Me., 396 A.2d 1012, 1013 (1979). When an inadequate record is presented to the Law Court to support an issue raised on appeal, such appeal must fail. *Id.; Berry v. Berry*, Me., 388 A.2d 108, 109 (1978).

The entry is:

Pro forma judgment affirmed.

It is ordered that the employer pay to the employee $550.00 for his counsel fees plus his actual and reasonable out-of-pocket expenses of this appeal.

All concurring.

---

4.  The transcript reads in pertinent part as follows:

> Commissioner: That concludes Mr. Madore's case?
> [Madore's Counsel]: I would like to have the opportunity—Peter, do you have Doctor Pritchard's testimony?

> [Bangor Roof's Counsel]: He's testified a couple of times.
> (Off Record Discussion)
> Hearing Concluded at 8:55 a. m.