Neil CALLAHAN

v.

Neil CALLAHAN and Maine Bonding & Casualty Company.

Supreme Judicial Court of Maine.

Argued March 15, 1982.

Decided April 26, 1982.

Gross, Minsky, Mogul & Singal, P. A., George Z. Singal (orally), Bangor, George C. Schelling, Douglas B. Chapman, Bar Harbor, for plaintiff.

Mitchell & Stearns, John A. Woodcock, Jr. (orally), Bangor, for defendants.

Before McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS and VIOLETTE, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The Workers' Compensation Commission found for the employee, Neil Callahan, on his petition for award of compensation. The employee, a self-employed carpenter engaged in his own general contracting business, had sought compensation under the Workers' Compensation Act[1] for an injury to his spine that occurred while lifting a sheet of plywood in the course of his work duties. The Commissioner found that Callahan suffered from Arnold-Chiari malformation and syringomyelia, that this physical congenital condition pre-existed his injury, but that the lifting incident sufficiently aggravated the underlying condition to render the injury compensable. Charac-

---

1. 39 M.R.S.A. § 2(5)(B) reads in pertinent part:

The term "employee" shall be deemed to include, if he elects to be personally covered by this Title, any person who regularly operates a business or practices a trade, profession or occupation, whether individually, or in partnership or association with other persons, whether or not he hires employees.

Such a person shall elect personal coverage by insuring and keeping insured the payment of compensation and other benefits under a workers' compensation insurance policy. The insurance policy shall clearly indicate the intention of the parties to provide coverage for the person electing to be personally covered . . . .

terizing Callahan's physical limitations as substantial, the Commissioner ruled that the employee was eighty percent disabled and awarded benefits based on an average weekly wage of $360.00.

The employer and insurance carrier appeal from the *pro forma* decree of the Superior Court, Hancock County, affirming the decision of the Commission. On appeal, the appellants assert that the Commissioner erred with respect to his findings relating to (1) the extent of Callahan's incapacity and (2) the amount of the average weekly wage, on which the award of benefits was based. We affirm the judgment of the Superior Court.

### A. Extent of Incapacity

The Commissioner found that Callahan was eighty percent disabled. In his original decree, the Commissioner characterized the employee's physical limitations as substantial. He found, however, that because of the employee's age, intelligence and past training, "there is a range of opportunity for employment in jobs commonly available." The appellants then sought additional findings of fact and conclusions of law and submitted proposed findings.

In response to this request, the Commissioner made these additional findings:

It would appear from the employers' proposed [findings] six and seven that the employer has confused and/or erroneously intertwined the computation of petitioner's "earning capacity" and evaluation of petitioner's present disability. *I conclude as a matter of law that these are separate and distinct findings.* I conclude as a matter of law that an evaluation of petitioner's disability must also take into account a factor for the potential for finding a job within ones (sic) limitations. The employer's effort to segregate the amounts earned by petitioner into "carpenters wages" and "business income" are specifically rejected inasmuch as *there is no basis in the record for me*

*to find that there is a likelihood that petitioner could obtain a position, or continue his own business, in such a fashion as to retain for himself only those non-physical or entrepreneurial activities.*

I find that petitioner was able to make nine dollars per hour for all of the activities in which he engaged in his business. I find it irrelevant that other persons might make varying amounts for doing similar jobs or for doing jobs entailing a part of the activities in which petitioner was engaged. (Emphasis added).

Seizing upon the language emphasized in the above quoted passage, the appellants assert that the findings manifest a misapprehension of the law as regards the question of incapacity. First, they suggest that the Commissioner, in evaluating Callahan's level of incapacity, improperly considered only pre-injury type employment opportunities available to Callahan as determinative of his post-injury earning capacity. In support of this argument, the appellants point to the language of the decree that notes Callahan would not be able to find a job encompassing only the non-physical portion of his prior work activities. The appellants further contend that the Commissioner's use of the quoted language, such as "there is no basis in the record for me to find," indicates that the Commissioner improperly placed the burden upon the appellants to establish that Callahan could be employed in a job requiring only non-physical activities. Finally, they assert that the Commissioner's decision demonstrates an error of law where he states that earning capacity and disability are "separate and distinct findings."

The appellants' arguments are not persuasive. The meaning of the reference portions of the decree cannot be detected in a vacuum. Proper evaluation of the Commissioner's reasoning requires that the language of the decree be examined in the context of its use, that is, as a reply to the appellants' proposed findings.[2] When

---

**2.** The proposed findings relevant to the instant appeal are as follows:

6. The Commission further finds that the employee is 80% physically disabled, but this physical disability is not an accurate or fair

viewed in this manner, the Commissioner's findings, while perhaps imprecise, manifest no misunderstanding of applicable law.

Keeping the above in mind, we do not believe that the Commissioner's referral to the likelihood or unlikelihood of the employee continuing in the entrepreneurial aspects of his pre-injury job suggests that the Commissioner erroneously focused all his consideration solely on the employee's ability to perform at his pre-injury position. *See Theriault v. Walsh Construction Co.*, Me., 389 A.2d 317, 320 (1978). The language in question merely addresses and rejects the appellants' suggestion in their proposed findings that carpentry wages be segregated from entrepreneurial wages in ascertaining the extent of incapacity. Similarly, the Commissioner's statement to the effect that "earning capacity" and "present disability" are "separate and distinct findings," when examined in connection with the rest of the language quoted above, indicates a rejection of the appellants' improper attempt to dispositively equate wage loss with earning capacity, (*see Coty v. Town of Millinocket*, Me., 423 A.2d 524, 526 (1980)), rather than a misunderstanding by the Commissioner of the appropriate applicable legal concepts. Moreover, the decree itself belies the appellants' contentions that the Commissioner looked only to pre-injury employment and wages in assessing the degree of incapacity,

in view of the Commissioner's express reference to the personal characteristics of the employee and to "jobs commonly available."[3] Finally, we find no reason to conclude that the Commissioner placed any burden on the appellants to establish the scope of employment opportunity available to Callahan.

■■ The appellants also claim that the degree of incapacity as found by the Commissioner is too high in view of Callahan's age, training and intelligence. The extent of a worker's incapacity is a question of fact. *Leo v. American Hoist & Derrick Co.*, Me., 438 A.2d 917, 921 (1981); *Madore v. Bangor Roof & Sheet Metal Co.*, Me., 428 A.2d 1184, 1188 (1981). On review of the record, we find competent evidence supporting the Commissioner's finding on this issue, and therefore, we cannot disturb this factual finding on appeal. *See Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512, 517 (1980).

## B. Average weekly wage

Callahan testified before the Commissioner that he worked on a cost plus labor basis, that he charged his clients nine dollars per hour for his time and that he made a three dollar per hour profit on his employees. This profit derived from the work of his

reflection of this employee's ability to earn wages. The Commission finds that the employee's incapacity is accurately and fairly expressed in the difference between his earning capacity as a businessman, which he continues to possess, and his earning capacity as a skilled union carpenter, which he no longer physically possesses; the Commission finds that the difference between the employee's charges of $9.00 per hour and the charges of a skilled union carpenter at $5.75 per hour accurately and fairly reflects the earning capacity retained by the employee. The Commission therefore finds that the employee has been and continues to be 65% incapacitated from the date of the injury.

7. The Commission finds, in the alternative, that a portion of the employee's $9.00 per hour charge represented the employee's entrepreneurial activity and his business overhead. The Commission concludes as a matter of law that entrepreneurial activities constitute profit, other than "wages, earnings or salary," including specifically profit from the labor of others,

and therefore are not compensable under this Act. Further, this Commission concludes that the employee's "cost of doing business" is as a matter of law other than "wages, earnings or salary" and is not compensable under this Act. The Commission finds that the wages of a skilled union carpenter of $5.75 per hour constitute those "wages, earnings or salary" that are permissable (sic) components of the employee's average weekly wages. The Commission finds that, having eliminated those activities that are not compensable, the employee is 100% totally disabled, but that his average weekly wage is $230.00.

3. For reasons analogous to those in the text, we also reject the appellants' argument that because the percentage of incapacity is the same as the percentage of time spent on physical activities, the Commissioner must have focused only upon pre-injury factors in determining incapacity.

employees, according to Callahan, was sufficient to cover the overhead of running his business. He also stated that he worked a forty hour week and that his salary was $360.00 per week, although he indicated that he did not take a regular cash draw each week.

The Commissioner specifically found that Callahan made nine dollars per hour as an employee of his self-employment contracting business and that this figure did not reflect any deduction for overhead or profit. He further concluded that any reduction in Callahan's hourly rate to take into account expenses would be "mere speculation" and any apportionment of expenses between Callahan's earnings and those of his employees could not be based on any evidence of record. The Commissioner viewed overhead expenses as *de minimis*.

The appellants challenge these findings on appeal. Specifically, they contend that the Commissioner erred in not subtracting business profit from Callahan's hourly rate of pay. Although the Commissioner expressly found that the nine dollar per hour rate did not reflect any deduction for profit, we find no error in the Commissioner's decision. Callahan's testimony that he earned a salary of $360.00 per week is sufficient to support, on appeal, the Commissioner's finding with respect to the amount of the average weekly wage. The appellants' bald assertion that Callahan owned his business and, therefore, some portion of his stated weekly pay must contain weekly profit distribution is inadequate to compel reversal of the finding made below. It was clearly within the province of the Commissioner to find, in view of the entire record, that Callahan's average weekly wage was in fact $360.00. We cannot say that the Commissioner's determination was unsupported by competent evidence. *See Roberts v. Smith*, Me., 415 A.2d 1089, 1090 (1980).

The entry will be:

Judgment affirmed.

Further ordered that the appellants pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.