Adelard BEAULIEU

v.

FRANCIS BERNARD, INC. and/or American Mutual Liability Insurance Company.

Supreme Judicial Court of Maine.

Nov. 1, 1978.

Pelletier & Lavertu by Rudolph T. Pelletier (orally), Madawaska, for plaintiff.

Mitchell, Ballou & Keith by John W. Ballou (orally), Kevin M. Cuddy, Bangor, for *defendant*.

Before McKUSICK, C. J., and ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Employee Adelard Beaulieu appeals from a pro forma decree of the Superior Court affirming an order of the Industrial Accident Commission[1] dismissing appellant's petition for further compensation. Employee contends that the commissioner applied an improper rule of law in finding that the amputation of his leg was not causally related to an injury he sustained in the course of his employment, and requests that total compensation be awarded beyond May 26, 1976, the date of the amputation.

We sustain the appeal.

On April 3, 1974, Beaulieu accidently cut his left leg with a chain saw while working as a woodsman for the appellee-employer, Francis Bernard, Inc. Beaulieu received medical treatment and returned to work by May 1, 1974. However, pain resulting from the accident persisted, and Beaulieu finally terminated his employment on September 6, 1974. In March 1975 the employee consulted Dr. Luc Bruneau who discovered that the employee's popliteal artery in his left leg was occluded and performed a series of corrective surgical operations. By September 1975 Beaulieu could walk but with some pain.

In early November of 1975 Beaulieu slipped and fell on the front steps of his home. After the fall, he experienced considerable pain in his left leg. Dr. Bruneau's examination two weeks later found the left leg cold and cyanotic, and all arteries occluded. Dr. Bruneau again performed corrective surgery but without success. Beaulieu continued to experience severe pain, and in late May of 1976, Dr. Bruneau amputated the employee's left leg just below the knee.

In the meantime, by a decree dated December 5, 1975, the commissioner awarded Beaulieu compensation for total disability for a period extending from September 6,

---

1. The name of the Industrial Accident Commission was changed to Workers' Compensation Commission by P.L.1978, ch. 612, effective July 6, 1978.

1974 to the date of the decree, for injuries resulting from the chain saw accident. On February 2, 1976, Beaulieu filed a petition for further compensation. The commissioner, on November 7, 1977, after hearing the medical testimony which was presented entirely through depositions, dismissed the petition.[2]

The commissioner set forth clearly the rationale underlying his decree. "It is not established," the commissioner wrote, "that the deterioration of the injured [left] leg, following the fall in November 1975, would have occurred had it not been for the fall." In other words, according to the commissioner, Beaulieu could not recover compensation beyond May 26, 1976, unless he could establish that the leg would have been amputated even if the subsequent fall had not occurred. The question is whether the commissioner's statement of the applicable rule of causation was correct.

We provided the answer in *Richardson v. Robbins Lumber, Inc.,* Me., 379 A.2d 380 (1977), a case certified only three days before the commissioner issued his decree of November 7, 1977, which we are now reviewing on appeal.[3] In *Richardson,* an employee suffered a back injury when struck by a piece of lumber in the course of his employment. Subsequently, the employee was involved in a non-work-related automobile accident which triggered a recurrence of the back pain. Following the automobile accident, the employee filed a petition for award of compensation which the commissioner denied, stating that "it would be merely a guess to conclude" that the employee's ultimate back injury was "attributable *solely* to the occurrences at work"; "there were several other occurrences, particularly the automobile accident which could have well been *the proximate cause* of the back problem . . . ." (Emphasis in original) *Id.* at 382. In vacating the com-

missioner's decree, we noted that "other courts have held that the employee's own conduct, if he does not injure himself intentionally or recklessly, does not relieve the employer of full liability for the disability aggravated by that conduct, provided there remains a substantial causative relationship between the work-related injury and the ultimate condition." *Id.* at 383. We defined a "substantial relationship" as follows:

"A substantial relationship exists when the employee's weakened condition due to the work-related injury is a cause of the second incident. [Citation omitted] *The employer's liability also continues when a second non-work-related incident acts upon the employee's condition already impaired by the work incident, causing that condition to ripen to greater disability, or accelerating the arrival of a stage in deterioration which would have been likely to develop from the initial injury alone.*" *Id.* at 383. (Emphasis added)

■ *Richardson* leaves no doubt that an employee may receive compensation for the deterioration of a work-related injury which is triggered by a subsequent non-work-related accident. *See also Crosby v. Grandview Nursing Home,* Me., 290 A.2d 375, 382 (1972) ("Aggravation of claimant's condition caused by ordinary incidents of living is compensable as attributable to the condition caused by the original injury"). The rule of law applied by the commissioner in the instant case was erroneous. Instead of asking whether the amputation would have occurred but for the subsequent fall, the commissioner should have asked whether the subsequent fall would have resulted in the amputation but for the previous work-related accident.

■ As we have stated in the past, "if the Commissioner is in error as to the law which controls his decision, the reviewing

---

2. Although the commissioner dismissed Beaulieu's petition for further compensation, the commissioner's decree awarded the employee total compensation from the date of the last payment received by Beaulieu (December 5, 1975) to the date of the amputation (May 26, 1976), "on the basis of prior stipulations by the parties."

3. The commissioner presumably did not receive a copy of this court's opinion in *Richardson v. Robbins Lumber, Inc., supra,* until after he issued his November 7, 1977, decree.

Court may substitute its understanding of the law for that of the Commissioner." *Jacobsky v. D'Alfonso & Sons, Inc.*, Me., 358 A.2d 511, 513 (1976). Under the Workers' Compensation Act, the Law Court possesses broad powers, similar to those "in appeals in actions in which equitable relief is sought," to "reverse or modify any [pro forma] decree . . . based upon an erroneous ruling or finding of law." 39 M.R.S.A. § 103 (Supp.1978).

■ The Law Court's disposition of a case upon finding that the commissioner applied an improper rule of law varies with the nature and quality of the evidence in the record. If application of the proper rule of law requires the factfinder to consider facts not in the record, the court must remand to the commissioner with instructions to take additional evidence. *See, e. g., Richardson v. Robbins Lumber, Inc., supra* at 383; *Justard v. Oxford Paper Co.*, Me., 328 A.2d 127, 130 (1974). However, even if the existing record is sufficient, the Law Court must still remand to the commissioner to apply the proper rule of law to the facts if the determination of the ultimate issue of liability rests on the factfinder's assessment of the credibility of witnesses who testified at the hearing. "[T]he [commissioner] who hears and sees the witnesses, who observes their hesitations, inflections and emphases, is in a more favorable position to judge their credibility than the appellate court which only reads the printed testimony." *See Matthews v. R. T. Allen & Sons, Inc.*, Me., 266 A.2d 240, 244 (1970).

■ Finally, where the existing record is adequate and in that unusual set of circumstances where the Law Court is in as good position to find the facts as the commissioner, then the Law Court may settle the ultimate question of the employee's right to compensation without remanding to the commissioner to make the same determination. *Ibid.* In such a case, the Law Court's resolution of the ultimate issue of the employer's liability serves the interests of all concerned by obtaining a speedy resolution of the parties' dispute and in avoiding duplication of effort by the Law Court and the Workers' Compensation Commission.

■ Plainly, the instant case falls in that final special category. The record before the commissioner and now before this court contains sufficient evidence to enable either tribunal to determine whether the ultimate deterioration of the employee's leg was "substantially related" to the injury he sustained in the course of his employment. Even more importantly, all the medical evidence was deposition testimony; that is, written evidence which the appellate court can read and appraise as well as a commissioner. Thus, the Law Court is in precisely the same position as the commissioner in finding facts from the testimony of the critical medical witnesses. While the employee did testify in person before the commissioner, nothing in his testimony contradicts the clear medical evidence of a substantial causal relationship between the employee's chain saw accident and his ultimate disability. Under these circumstances it is appropriate, and consistent with conserving adjudicatory resources, for this court itself to decide the employee's entitlement to compensation by applying the proper principles of law to the record presented to the commissioner.

The undisputed facts in the record support only one conclusion. Dr. Luc Bruneau, a vascular surgeon of Montreal, who treated the employee from March 1975 and performed all of the operations upon him, including the amputation, gave deposition testimony in the employee's behalf. Dr. Charles E. Dixon, a vascular surgeon of Bangor, who had reviewed the employee's medical records and testimony, appeared at deposition on behalf of the employer. Both physicians testified that but for the injuries resulting from Beaulieu's chain saw accident, his leg would not have been amputated.

At deposition, employee's counsel asked Dr. Bruneau: "[I]f Mr. Beaulieu would not have incurred the damage that he did to his leg in the woods accident, would the fall in November of 1975 have precipitated the problems and the condition that you found to exist when you treated him [after the

fall]?" The doctor replied, "The answer is no, definitely, no"; and he then elaborated:

"Because the kind of fall he had is not a big accident, it is just a fall. You can't have a fracture, you can have a bruise, but a thing like that, but not that kind of occlusion of the arteries, you know, because he had a fall, the whole body fell down and he did not have any trouble in the other leg."

Similarly, under questioning by employer's counsel, Dr. Dixon noted that there was no sign of external damage to the left leg following the fall and concluded:

"Based on the facts that have been presented to me including the statement that there was no evidence of injury to the limb, it would seem to me that it would be highly unlikely that the individual would have thrombosed a vessel resulting in amputation as a result of the fall that he had."

■ In short, this record makes clear that there was a "substantial causal relationship" between Beaulieu's chain saw accident and the amputation of his leg following his subsequent fall. Accordingly, the appellant's petition for further compensation must be granted. It remains for the commissioner on remand to determine the extent of Beaulieu's disability and the period for which compensation will be awarded.

The entry must be:

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded to the Workers' Compensation Commission with instructions to grant employee's petition for further compensation and to conduct further proceedings not inconsistent with this opinion.

It is further ordered that the employer pay to the employee an allowance of $550 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

POMEROY and WERNICK, JJ., did not sit.