Terry E. RUGAN

v.

The DOLE COMPANY and Continental
Casualty Company.

Supreme Judicial Court of Maine.

Jan. 23, 1979.

Maurice A. Libner (orally), Brunswick, for plaintiff.

Mitchell, Ballou & Keith by Peter M. Weatherbee (orally), Bangor, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

The Dole Company and its insurance carrier, Continental Casualty Company, have appealed from an award to Terry E. Rugan by the Workers' Compensation Commission. Mr. Rugan, having been the recipient of compensation for approximately seven months in 1975 resulting from an industrial injury, but having returned to work on September 18, 1975, on October 21, 1977, petitioned for "further compensation on account of total incapacity subsequent to [September 18, 1975]." 39 M.R.S.A. § 100. The Commission made an award on a finding of "50% incapacitated," which was affirmed by the Superior Court in a pro for-

ma decree from which this appeal was taken. 39 M.R.S.A. § 103.

We sustain the appeal.

The Commission premised its award on this finding:

The Commission finds that Terry Rugan is 50% incapacitated. He should avoid heavy lifting, bending, twisting or driving a truck. The Commission finds that petitioner is entitled to further compensation as of December 18, 1977 which is related to his original injury of February 25, 1975—that his original injury is a substantial causative factor of his present partial disability. The Commission also finds that Mr. Rugan did *not* use reasonable effort to obtain work within the tolerance of his physical condition, and that he failed in his effort, either because prospective employers would not hire him with such a limited capacity or because there was no reasonably stable market in his community for that restricted work of which he was capable.

Appellants argue:

It is the Appellants' position that it was incumbent upon Mr. Rugan to present evidence to the Commissioner demonstrating a causal relationship between his physical limitations and his unemployment in order to qualify for the receipt of compensation benefits. The record clearly demonstrates that Mr. Rugan's being out of work was in no way related to his acknowledged physical difficulties. He was not working due to the simple fact that no work was available. . . .

■ Since Mr. Rugan initiated the petition for further compensation, he had the burden of proving to the Commission his entitlement thereto.[1] *Oliver v. Wyandotte Ind. Corporation,* Me., 360 A.2d 144, 149 (1976); *Foster v. Bath Iron Works Corpora-*

---

1. That the employee commenced this petition for an award of compensation distinguishes this case from *Matthews v. Boss,* Me., 389 A.2d 32 (1978), in which the employer sought a review of the employee's partial incapacity. In view of the employer's burden of proof in *Matthews,* we stated that a partially disabled employee could not be compelled to return to work in order to demonstrate the extent of his earning capacity. Here, the employee by his return to work has demonstrated an undiminished earning capacity and now carries the burden of proving his earning capacity is nevertheless diminished following his lay-off from work.

tion, Me., 317 A.2d 11, 13–14 (1974); *Bolduc v. Pioneer Plastics Corporation,* Me., 302 A.2d 577, 580 (1973). To satisfy this burden of proof the petitioner must establish a causal connection between the prior industrial injury and the current disability. *MacLeod v. Great Northern Paper Company,* Me., 268 A.2d 488, 489, 55 A.2d 780 (1970); *Baker's Case,* 143 Me. 103, 109, 55 A.2d 780, 783 (1947). Although an employee is not completely medically incapacitated, he is entitled to an award of compensation for total disability when he is unable to get work on account of the injury. *Levesque v. Shorey,* Me., 286 A.2d 606, 610–11 (1972). Once the employer has demonstrated that the employee is only partially disabled, the burden is then upon the employee to establish a causal connection between his partial incapacity and his unemployment. *Crocker v. Eastland Woolen Mill, Inc.,* Me., 392 A.2d 32, 34–35 (1978).

> The employee must come forward with evidence . . . that he has engaged in a good faith effort to obtain work within the tolerance of his physical condition, and then he must demonstrate *that he failed in his effort, either because employers in his community would not hire people with such a limited capacity to do the type of work within his tolerance, or because there was no reasonably stable market in his community for that restricted work of which he was capable.*

(Emphasis supplied.) *Bowen v. Maplewood Packing Co.,* Me., 366 A.2d 1116, 1118–19 (1976).

Once an employee has returned to work without a diminution in his wage-earning capacity and is later laid off for reasons not associated with his disability, the employee might nevertheless be entitled to an award of compensation if his disability is demonstrated to have been partially responsible for a reduction in his earning capacity. Such a showing necessitates evidence of a causal connection between the employee's inability to find work and his disability, rather than general economic conditions or other factors unassociated with his disability. *Boyle v. Gatti,* 40 A.D.2d 1063, 339 N.Y.S.2d 65, 66 (1972).

The emergent issue is whether the petitioner overcame the risk of nonpersuasion by presenting evidence on which the Commissioner could premise his within quoted further compensation. If the Commissioner premised his conclusion on inferences as opposed to direct evidence, we are at liberty to review such inferences. *Sargent v. Raymond F. Sargent, Inc.,* Me., 295 A.2d 35, 42 (1972). In the absence of competent evidence to sustain a finding, the issue becomes one of law and mandates a reversal. *Crosby v. Grandview Nursing Home,* Me., 290 A.2d 375, 379 (1972).

The facts of this case are not seriously in dispute. Mr. Rugan was injured and thereby disabled[2] on February 25, 1975, returned to work on September 18, 1975, and after an interim lay-off due to lack of work was

---

2. Mr. Rugan was last seen by his physician on November 3, 1977, and his condition was then described as follows:

> A Well, his complaints were referrable to the lower lumbar spine and he stated that he still had pain radiating into his left leg intermittently. He was examined and was noted to have full range of motion of the lumbar spine with only limitation in terms of hyperextension and pain on hyper-extension.
> X-rays were taken at that time. They showed a solid fusion between the 4th and 5th lumbar vertebra with no further evidence of diminished disk spaces at other levels in the lumbar spine.
>
> . . . . .
>
> I would think it would be unwise for him to lift anything greater than fifty pounds. And terms of frequency, if lifting fifty pounds on a

repetitive basis throughout an eight-hour day job, I think it would give him problems.
> Q Okay, Doctor. Were there any limitations that you placed on the patient in terms of climbing?
> A Well, once again I think much like heavy work or construction work, climbing is difficult for somebody who has had back problems. Balance is not good. I think climbing should be excluded. I think driving a truck with a great deal of vibration, bouncing on any heavy equipment where that type of heavy stress is encountered should be eliminated.

Our failure to discuss the validity of the finding of "50% incapacitated" should not be construed either as an acceptance or rejection of that conclusion. In view of the result here reached, it is not necessary to discuss it.

employed in Bucksport from February 8, 1976, until the job ended on March 11, 1977. The employee commenced the instant petition on October 21, 1977, the decree thereon being dated June 5, 1978. That Mr. Rugan was unemployed from March 11, 1977, until, at least, the date of the last Commission hearing, February 1, 1978, is undenied.

Mr. Rugan was a construction electrician and a member of a labor union. After March 11, 1977, he registered on the "Union's out-of-work list," which operates on a "first serve basis" by offering jobs to those at the top and working down. At the time of the hearing on February 1, 1978, he was "twenty-two from the top." The record is silent as to how many union electricians were on the list or how far Mr. Rugan had risen thereon since his initial registration. He would undoubtedly find work, however, when his name reached the top of the union list. The employee, therefore, would be hard pressed to assert that no market exists in the area for a union electrician, although the economic climate may have slowed the hiring pace. Moreover, his employment for fifteen months as a construction electrician after his injury is uncontroverted evidence of a market for his post-injury capabilities.

Beyond being on the union list he did not seek employment *as an electrician* because union rules preclude a member from soliciting his own work. Starting on November 4, 1977, Mr. Rugan sought employment otherwise than as an electrician by applying to at least six potential employers in the area. He was unsuccessful. His applications disclosed his physical limitations but in no single instance did he testify that his rejection was *due to his disability.*

■ It is not a "given" that because one disclosed a physical limitation to a prospective employer and does not get the position applied for, the only reason therefor is the disability. In *Martel v. United States Gypsum Company,* Me., 329 A.2d 392, 396 (1974), for example, the evidence was explicit that the efforts to find work "had failed by reason of his injury." *Id.* No such finding could be made on the evidence in this record.

Since we are reviewing the Commissioner's ultimate conclusion because it is premised on an inference, we should also note the equal rationality of another inference. Mr. Rugan was a construction electrician who respected his union obligations. He was on the "Union out-of-work list," working his way up to the top position, obviously anxious to gain a position of seniority. Any of the six potential employers to whom he made application for non-electrical employment could have as well been influenced in their rejection by the certain knowledge that Mr. Rugan would leave the position the moment the union provided an electrician's job, as they would by knowledge of Mr. Rugan's partial disability.

■ In summary, the petitioner had the burden of proving that his employment rejection was caused by his disability. The evidence stopped short of such a demonstration. Since the petitioner established the marketability of his own talents (13 months consecutive employment in Bucksport), this is not a case where the Commissioner could infer entitlement to compensation. On the facts here, the petitioner failed to demonstrate that his rejection in the non-electrical labor market was attributable to his disability. In the electrical labor market, the Commissioner had no evidence on which he could either find as a fact, or infer, that Mr. Rugan's unemployment resulted from anything but the unavailability of employment opportunity. *See Crocker v. Eastland Woolen Mill, Inc.,* Me., 392 A.2d 32 (1978).

The entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Remanded to the Workers' Compensation Commission for entry of a decree dismissing the petition.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

NICHOLS, J., did not sit.