**Charlotte MAILMAN**

v.

**COLONIAL ACRES NURSING HOME and St. Paul Fire & Marine Insurance Company.**

Supreme Judicial Court of Maine.

Argued June 3, 1980.

Decided Sept. 29, 1980.

McTeague, Higbee & Tierney, Charles R. Priest (orally), Patrick N. McTeague, Brunswick, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Phillip E. Johnson (orally), Augusta, for defendants.

Before WERNICK, NICHOLS, GLASSMAN and ROBERTS, JJ.

GLASSMAN, Justice.

The employer, Colonial Acres Nursing Home, and its insurance carrier, St. Paul Fire & Marine Insurance Company, appeal from a pro forma decree entered by the Superior Court, Kennebec County, which upheld a decision of the Workers' Compensation Commission awarding the worker, Charlotte Mailman, compensation for partial incapacity. The appellants argue that the Commission erred in awarding benefits because there was no evidence of a causal connection between the worker's disability and her inability to find employment, there was insufficient medical evidence establishing a causal nexus between the worker's present disability and her original injury and the Commission improperly failed to reduce the award by the amount of unemployment benefits received by the worker. We affirm the judgment.

On May 1, 1976, Mailman suffered a compensable back injury while employed as a kitchen worker and cleaning woman at the appellant's nursing home in Lincoln. Under an approved agreement, she received compensation for total incapacity until November 28, 1976, when she began work as a winding machine operator at a textile mill in the same town. Although Mailman maintained that she experienced physical discomfort in her back and needed assistance in performing this work, she continued in a full-time job at the mill until the end of September, 1978, when the mill laid off its employees because supply problems caused a temporary shutdown of operations. From mid-October, 1978, until April, 1979, Mailman received unemployment compensation, and not until June, 1979, did she begin what proved to be an unsuccessful search for employment.

In February, 1979, the worker filed a petition for further compensation. The only physician produced at the hearing on this petition testified that Mailman currently suffers from osteoarthritis in the lower lumbar spine region and that this disability precludes moderate to heavy work activity. This physician also testified that Mailman's current disability, although degenerative in origin, had been aggravated by the industrial injury. The Commission found that the worker is partially disabled as a result of the 1976 injury and ordered that she receive compensation for partial incapacity as of October 1, 1978.

■ Before we consider the appellants' three claims of error, we must first determine whether we have jurisdiction to hear this appeal. See, e. g., Wood v. Wood, Me., 407 A.2d 282, 283 n.1 (1979). Acting pursuant to M.R.Civ.P. 73(a), the Superior Court granted the appellants a thirty-day extension within which to file a notice of appeal because, through excusable neglect, their original notice was filed beyond the ten-day appeal period prescribed by 39 M.R.S.A. § 103. In Remick v. Erin, Inc., Me., 414 A.2d 896, 897 (1980), we recently raised, but left open as unnecessary to the decision, the question whether the thirty-day, excusable-neglect extension provided under Rule 73(a) applies to appeals in workers' compensation cases. We now decide this question in the affirmative based on the plain language of Rule 73(a) which provides in pertinent part:

Whenever a judgment of the Superior Court ... is by law reviewable by the Law Court, such review shall be by appeal in accordance with these rules.... The time within which an appeal may be taken shall be 30 days from the entry of the judgment appealed from unless a shorter time is provided by law, except that: (1) upon a showing of excusable neglect the court in any action may extend the time for filing the notice of appeal not exceeding 30 days from the expiration of the original time herein pre-

scribed; . . . . M.R.Civ.P. 73(a) (emphasis added).

Because this rule clearly authorized the Superior Court, upon a finding of excusable neglect, to grant the extension in the instant case, we have jurisdiction over the appeal, notwithstanding that the notice was untimely under 39 M.R.S.A. § 103.

The appellants first challenge the Commission's determination of partial incapacity, arguing that as a matter of law an injured worker who has returned to work is entitled to compensation when he is laid off from that job only if he can show by competent evidence a causal connection between an inability to find employment and his disability. *See Rugan v. Dole Co.*, Me., 396 A.2d 1003, 1005 (1979); *Coty v. Town of Millinocket*, Me., 393 A.2d 156, 157 (1978). The appellants, however, misconstrue the import of our decisions in *Rugan* and *Coty*. *Rugan* stands only for the proposition that when a worker secures post–injury employment which patently demonstrates an undiminished wage–earning capacity and is subsequently laid off for reasons unassociated with his disability he may nevertheless establish incapacity by showing a causal relationship between an inability to find work and his disability. Because the worker in *Rugan* failed to make this showing, we held that there was insufficient evidentiary support for the compensation award. *See* 396 A.2d at 1005–06. In *Coty*, the only issue was whether competent evidence supported the decision of the Commission denying the worker further compensation. We upheld this decision because the worker had produced no evidence of a diminished earning capacity. *See* 393 A.2d at 157. Significantly, neither *Rugan* nor *Coty* altered the right of an injured worker under 39 M.R.S.A.

§ 55 to compensation for partial incapacity "if his capacity to earn has been impaired as a result of his work related injury." *McQuade v. Vahlsing, Inc.*, Me., 377 A.2d 469, 471 (1977) (emphasis omitted). Nor did these cases disturb the general principle announced in *Matthews v. Boss*, Me., 389 A.2d 32 (1978), that an injured worker may be entitled to compensation for partial, as opposed to total, incapacity whether or not he attempts to find work. *Id.* at 35.

The record in the instant case discloses competent evidence that, unlike that of the workers in *Rugan* and *Coty*, Mailman's post–injury employment at the textile mill did not reflect an undiminished work capacity.[1] *See Midland–Ross Corp. v. Industrial Commission*, 107 Ariz. 311, 313, 486 P.2d 793, 795 (1971). Mailman testified that she performed her job under continued, severe physical discomfort and with the assistance of fellow workers and a sympathetic employer. She produced direct medical evidence of a reduced earning capacity caused by the industrial injury. This evidence adequately supports an award of compensation based on a finding of partial incapacity.[2] *See, e. g., Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365, 369 (1975).

The appellants also contend that the worker failed to establish the requisite causal connection between the industrial injury and her present disability, *see, e. g., MacLeod v. Great Northern Paper Co.*, Me., 268 A.2d 488, 489 (1970), because there was no medical evidence showing that the 1976 injury was a cause of the osteoarthritis. Contrary to the appellants' assertion, expert medical testimony is not essential to establish causation.[3] *E. g., Russell v. Camden*

---

1. Although a worker's post injury earnings are good evidence of the effect of the injury on his capacity to earn, they do not conclusively establish the worker's earning capacity. *See generally* 2 A. Larson, *The Law of Workmen's Compensation* § 57.31 (1976).

2. Because it found that Mailman had not made reasonable efforts to secure employment within her physical limitations, the Commission refused to award her compensation for total inca-

pacity. *See, e. g., Crocker v. Eastland Woolen Mill, Inc.*, Me., 392 A.2d 32, 34–35 (1978).

3. In support of their contention regarding the necessity of medical evidence on the issue of causation, the appellants rely on two per curiam decisions both of which are inapposite. In *Gardner v. D. W. Small & Sons*, Me., 398 A.2d 1217 (1979), equivocal medical testimony supported the Commission's finding of no causation, while in *Sadler v. Georgia–Pacific Corp.*, Me., 382 A.2d 1043 (1978), there was no evi-

*Community Hospital*, Me., 359 A.2d 607, 612 (1976); *Matthews v. R. T. Allen & Sons*, Me., 266 A.2d 240, 247 (1970). In any event, the medical evidence produced at the hearing clearly provides competent evidentiary support for the Commission's factual finding of causation. *See, e. g., Widdecombe v. National Sea Products, Inc.*, Me., 389 A.2d 39, 41 (1978). A worker need not show that the occupational injury was the sole proximate cause of the current disability. "It is sufficient if he proves that a pre–existing condition was accelerated or aggravated by a work connected accident." *MacLeod v. Great Northern Paper Co., supra*, 268 A.2d at 489; *e. g., Crocker v. Eastland Woolen Mill, Inc.*, Me., 392 A.2d 32, 34 n.3 (1978).

█ Finally, the appellants assert that the Commission erred in failing to decrease the award by the amount of the unemployment benefits the worker received from mid–October, 1978, until April, 1979. With exceptions not here relevant, 39 M.R.S.A. § 62–A directs the Commission to reduce compensation by the amount of any unemployment benefits received by the worker during the period of the award.[4] *Id.* This enactment, P.L.1979, ch. 496, § 2, became effective in September of 1979 and radically changed prior decisions of this Court which held that the Commission lacked authority to set off amounts received in the form of unemployment benefits. *E. g., Murray v. City of Augusta*, Me., 394 A.2d 1171, 1173 (1978); *Page v. General Electric Co.*, Me., 391 A.2d 303, 309 (1978); *Edwards v. Curtis*, Me., 387 A.2d 223, 224 (1978). Although it is undisputed that the industrial injury occurred more than three years before the effective date of the statute, the appellants contend Section 62–A has a procedural, rather than substantive, effect and, therefore, the statute is applicable to the instant case which was pending in September, 1979. *See Sutherland v. Pepsi–Cola Bottling Co.*, Me., 402 A.2d 50, 52 (1979); *Batchelder v. Tweedie*, Me., 294 A.2d 443, 444–45 (1972).

This argument is without merit. Unlike the purely procedural provisions at issue in *Sutherland* and *Batchelder*, Section 62–A vitiated the right of Maine workers to compensation awards that were undiminished by any unemployment benefits they might also have received. As a direct legislative response to contrary case law, the statute declares new public policy, altering the rights of injured workers under the compensation scheme. *Cf. Langley v. Home Indemnity Co.*, Me., 272 A.2d 740, 746 (1971). Furthermore, nothing in the language of this provision shows an intention to give the statute retroactive effect. As we have repeatedly emphasized, a statute has only prospective operation " 'in the absence of strong, clear and imperative language indicating a legislative mandate that the legislation be given retroactive applicability.' " *Coates v. Maine Employment Security Commission*, Me., 406 A.2d 94, 97 (1979), *quoting Barrett v. Herbert Engineering, Inc.*, Me., 371 A.2d 633, 635 n.1 (1977); *e. g., Towle v. Department of Transportation*, Me., 318 A.2d 71, 74 (1974).

The entry is:

Judgment affirmed.

It is further ordered that the appellants pay to the appellee an allowance of $550.00 for her counsel fees plus her reasonable out–of–pocket expenses for this appeal.

All concurring.

---

dence, medical or otherwise, on the issue of causation.

4. Section 62–A provides in pertinent part:
   Compensation paid under this Act, ... to any employee for any period with respect to which he is receiving or has received benefits under the employment security law, shall be reduced by the amount of the unemployment benefits. 39 M.R.S.A. § 62–A(1).