Rodney L. DUNTON

v.

**EASTERN FINE PAPER COMPANY
et al.**

Supreme Judicial Court of Maine.

Argued Sept. 17, 1980.

Decided Dec. 8, 1980.

Mitchell & Stearns, John Woodcock, Jr., Kevin M. Cuddy (orally), Bangor, for plaintiff.

Rudman, Winchell, Carter & Buckley, William S. Wilson, Jr. (orally), Michael P. Friedman, Bangor, Norman & Hanson, Robert F. Hanson, Stephen Hessert (orally), Portland, for City of Brewer.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ., and DUFRESNE, A. R. J.

ROBERTS, Justice.

On appeal from a pro forma judgment affirming a decision of the Workers' Compensation Commission, Eastern Fine Paper Company raises issues of notice and late filing as well as insufficiency of the evidence. The Commission found that the employee, Rodney L. Dunton, was totally disabled as the combined result of a compensable injury to his back received in December, 1972, while he was employed by Eastern and a second compensable injury received in June, 1976, while he was employed by the City of Brewer. The Commissioner was unable to determine the relative contribution of each injury and therefore ordered Eastern and the City each to pay one–half of Dunton's total incapacity. We affirm the pro forma judgment.

The December, 1972, accident at Eastern occurred when Dunton slipped and fell on a wet floor while running away from an exploding machine. He did not miss any work on account of this fall. Although he experienced intermittent back pain beginning early in 1973, he testified that he did not connect his back problems with the fall at work, and he did not mention the fall to the various doctors he consulted. The second accident occurred in June, 1976, after Dunton had voluntarily left his employment at Eastern and gone to work as a waste water treatment plant operator for the City. While stepping down from a truck onto a wet cement platform, he slipped and fell on his back and leg. Dunton testified that his back pain continued after this fall and gradually became worse. In April, 1977, he consulted Dr. Ballesteros, a neurological surgeon, and underwent surgery for removal of a herniated disc in his back.

In May, 1977, Dunton filed petitions for award of compensation against both employers. Because of the expiration of the term of the Commissioner before whom the hearings were held, the parties agreed that the case could be decided by another commissioner on the hearing transcripts.

Eastern argued that Dunton's claim based on the 1972 accident was barred by his failure to comply with the 30–day notice requirement of 39 M.R.S.A. § 63 and the two–year filing limit of 39 M.R.S.A. § 95. The Commission found that the failure to give notice was excused by the employer's actual knowledge of the accident, 39 M.R.S.A. § 64, and that the late filing was excused because it resulted from a mistake of fact as to the cause and nature of the injury, 39 M.R.S.A. § 95. On appeal, Eastern contends that these findings are erroneous and also that the evidence does not support a finding of causal connection between the 1972 accident and Dunton's ultimate incapacity.

## I.

Before reaching the merits of the appeal we examine the proper standard for reviewing the Commissioner's findings in order to eliminate a possible source of confusion. This court's jurisdiction to review Workers' Compensation Commission orders, via appeals from pro forma Superior Court judgments, is conferred by 39 M.R.S.A. § 103. Section 103 provides, in part:

[T]here shall be no appeal [from the pro forma decree] upon questions of fact found by [the] commission . . . .

Upon any appeal [from the pro forma decree], . . . the law court may, after consideration, reverse or modify any decree . . . based upon an erroneous ruling or finding of law.

In addition, 39 M.R.S.A. § 99 provides in part that the Commissioner's "decision, in the absence of fraud, upon all questions of fact shall be final . . . ."

In the usual case, therefore, errors of law are subject to appellate review, but the Commissioner's findings of fact are conclusive if supported by competent evidence. *E. g., Blackman v. Harris Baking Co.*, Me., 407 A.2d 21, 22 (1979). Eastern, however, invites us to disregard the Commissioner's findings and independently find the facts. Eastern argues that we are freed from the usual narrow scope of appellate review because the Commissioner made his decision entirely from a written record without hearing live witnesses. Instead, the appellant concludes, we are obligated to make new findings of fact uninfluenced by those of the Commission.

As support for its position, Eastern cites our opinion in *Matthews v. R. T. Allen and Sons, Inc.*, Me., 266 A.2d 240 (1970). In *Matthews* we said that the usual constraints on judicial review of the Commission's fact finding do not apply where the findings were made solely from written evidence. We reasoned that because the credibility of live witnesses observed by the Commissioner was not involved, an appellate court was in as good a position as the Commissioner to review the record and determine the facts. 266 A.2d at 244. In *Poole v. Statler Tissue*

*Corp.*, Me., 400 A.2d 1067 (1979), we cited the *Matthews* concept where the Commissioner received both oral and written testimony with only the written evidence providing any support for his findings.

■ We now recognize that *Matthews* and *Poole* might be interpreted as a basis for us to disregard the usual limitation on our function as an appellate court. The holding in *Matthews*, however, was limited to a finding that the Commissioner had applied an erroneous legal concept of compensable injury. Similarly, in *Poole* we found no competent evidence to support a finding that the second injury was a separate intervening contributing cause of disability. We reject the concept that submission of written testimony, whether in the form of hearing transcripts, depositions or medical reports, changes the otherwise limited scope of review of findings of fact by the Commission. Two reasons lead us to affirm this position.

First, the conclusion that an appellate court is as capable as the fact finder below in reviewing written evidence is inappropriate where the fact finder is a commission established by the legislature especially to decide cases in a narrow field. In that situation, as this court has recognized, the commissioner "acquires an expertise and accumulates an experience in his limited, specialized field often more extensive than that of the judiciary." *Jacobsky v. D'Alfonso & Sons, Inc.*, Me., 358 A.2d 511, 514 (1976). *See also Wing v. Cornwall Industries*, Me., 418 A.2d 177 (1980). This expertise extends beyond merely evaluating the credibility of live witnesses to include assessing evidence offered in written form.

In the present case we are asked to disregard the decision of an official whose full time responsibility is to evaluate workers' compensation claims and, as generalist judges, to interpret on our own the medical evidence offered by several doctors. We, as well as other courts, have recognized the wisdom of deferring to agency expertise in complex areas, *e. g., Federal Power Commission v. Florida Power and Light Co.*, 404 U.S. 453, 463, 92 S.Ct. 637, 643, 30 L.Ed.2d

600 (1972); *Biddeford and Saco Gas Company v. Portland Gas Light Company*, Me., 233 A.2d 730, 736 (1967). Certainly we are justified in showing similar deference here.

The cases cited in *Matthews* in support of the expanded scope of review did not involve the same consideration of the Commission's expertise as we encounter here. *See Orvis v. Higgins*, 180 F.2d 537, 539 (2d Cir. 1950) (reciprocal trusts; inferences drawn from undisputed facts); *In re Will of Edwards*, 161 Me. 141, 149, 210 A.2d 17, 22 (1965) (interpretation of a will on agreed statement of facts). In those situations, the court may have concluded that a trial judge without specialized expertise is no more capable of evaluating written evidence than an appellate court. In fact, one of the cases cited as support in *Matthews* made this same distinction between findings by an administrative agency and by a trial judge, specifically excluding findings by administrative agencies from the broadened scope of review. *See Orvis v. Higgins*, 180 F.2d at 539.

Subsequent cases citing *Matthews* and *Poole* similarly have not concerned the issue of agency expertise, involving instead either review of trial judges or referees rather than specialized agencies, *e. g., Brengelmann v. Land Resources of New England and Canada, Inc.*, Me., 380 A.2d 213 (1977); *Northeast Investment Co. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 845 (1976), or factual errors so glaring they should be labelled errors of law, *Beaulieu v. Francis Bernard, Inc.*, Me., 393 A.2d 163, 166 (1978) ("The undisputed facts in the record support only one conclusion."). We have also shown our unwillingness to expand this concept from the usual narrow scope of review to agencies other than the Workers' Compensation Commission. *See In re Lefebvre*, Me., 343 A.2d 204 (1975) (Public Utilities Commission); *State Board of Education v. Coombs*, Me., 308 A.2d 582 (1973) (State Employees Appeals Board). Our research discloses no state allowing the appellate court independently to review written evidence in workers' compensation cases. *See Perry v. Industrial Commission*, 112 Ariz. 397, 542 P.2d 1096 (1975) (rejecting argument that the court can separately evaluate written medical evidence).

Second, and more importantly, even if we should conclude that we are as capable as the commissioner to find facts from a written record, we should not do so. Rather, an appreciation of the proper role of an appellate court suggests that we defer to the commission's findings. That the issue of credibility is cited as a factor does not mean that the evaluation of credibility is the only justification for finality of fact finding. Suggestions to the contrary in appellate opinions sometimes disguise a holding that there was no competent evidence or that the record discloses an application of an erroneous legal precept. Judicial economy dictates that we leave to the tribunal below the fact–finding role placed there by the legislature. *See* 39 M.R.S.A. §§ 99, 103. The Law Court should not grant a trial de novo that the legislature has not seen fit to provide.

In a series of early cases we strayed from our proper appellate function into the domain of the fact finder in reviewing workers' compensation cases. Seizing upon ambiguous language in *Orff's Case*, 122 Me. 114, 119 A. 67 (1922), we implied that, although the Commission's findings in favor of the petition must be upheld if any evidence supports them, findings against the petition are open to full review by the Law Court on appeal. *See Weymouth v. Burnham & Morrill Co.*, 136 Me. 42, 44, 1 A.2d 343, 344–45 (1938); *Drouin v. Ellis C. Snodgrass Co.*, 138 Me. 145, 148, 23 A.2d 631, 632 (1941); *McNiff v. Town of Old Orchard Beach*, 138 Me. 335, 337, 25 A.2d 493, 494 (1942). Finally, in *Robitaille's Case*, 140 Me. 121, 34 A.2d 473 (1943), we recognized that the applicable statute, the predecessor to 39 M.R.S.A. § 99, did not allow the Law Court to supersede the Commissioner as trier of fact but, rather, limited our role to reviewing questions of law, *Robitaille's Case* at 125, 34 A.2d at 474.

In *Guerrette v. Fraser Paper, Ltd.*, Me., 348 A.2d 260 (1975), we faced the question of the scope of our appellate function under

**516**

a 1961 amendment of 39 M.R.S.A. § 99.[1] That section states in part:

[The Commissioner's] decision, in the absence of fraud, upon all questions of fact shall be final but whenever in a decree the commission expressly rules that any party has or has not sustained the burden of proof cast upon him, the said finding shall not be considered a finding of fact but shall be deemed to be a conclusion of law and shall be reviewable as such.

Although encouraged to find that the statute authorized us to review the entire record and make independent findings of fact whenever the Commissioner finds against the petitioner, we declined to interpret our authority so broadly. Instead, we construed the statute as allowing us "to make independent factual evaluations from the record only in those cases where a commissioner has failed to do so and has founded his decision solely on the assertion that a petitioner has failed to sustain the burden of proof." *Guerrette v. Fraser Paper, Ltd.,* 348 A.2d at 262. We held that the record did disclose "a conclusion of fact supported by competent evidence from which we are not authorized to deviate." *Id.* The subsequent amendment of section 99[2] to require findings of fact only upon request of a party limits our "factual evaluation" to a determination of whether the record discloses any reasonable basis to support the Commissioner's decision. *Sutherland v. Pepsi–Cola Bottling Co.,* Me., 402 A.2d 50, 52 (1979).

We also recognize that we have previously said that where the Commissioner's conclusion is premised "on inferences as opposed to direct evidence, we are at liberty to review such inferences." *Rugan v. Dole Co.,* Me., 396 A.2d 1003, 1005 (1979). We held in *Rugan,* however, that the petitioner simply had failed to present sufficient evidence to support the Commissioner's award. *Mailman v. Colonial Acres Nursing Home,* Me., 420 A.2d 217 (1980). Likewise, in *Delano v. City of South Portland,* Me., 405 A.2d 222 (1979), after citing *Rugan,* we held

that the record "is devoid of competent evidence to sustain the reference finding and that under such circumstances the issue becomes one of law and mandates a reversal." *Id.* at 228.

In *Rugan* we cited *Sargent v. Raymond F. Sargent, Inc.,* Me., 295 A.2d 35 (1972). Although we described the issue in *Sargent* as a review of a factual conclusion based on an inference drawn from proved or admitted circumstances, we there held that the Commissioner applied an incorrect legal concept of "deviation from the course of employment." In *Sargent* we quoted from *Stanley v. Petroleum Tank Service, Inc.,* Me., 284 A.2d 280, 281 (1971), which in turn had quoted from *Mailman's Case,* 118 Me. 172, 177, 106 A. 606, 608 (1919), as follows:

But the inferences which the commissioner draws from proved or admitted circumstances must needs be weighed and tested by this court. Otherwise it cannot determine whether the decree is based on evidence or conjecture.

In other words, the court will review the commissioner's reasoning but will not, in the absence of fraud, review his findings as to the credibility and weight of testimony.

Whatever interpretation might be drawn from the first sentence of the above quotation, the context belies any purpose of broadening the scope of appellate review in worker's compensation cases. That this is so may be seen from a careful reading of the entire section of the *Mailman* opinion entitled "Evidence Required To Support Decree." Indeed, at page 179, we suggested that a Commission finding has greater weight than a jury verdict and that such a finding "cannot be impeached by showing errors of judgment, however gross, as to the *weight* and credibility of testimony." (Emphasis added.) We now determine that nothing contained in *Mailman* contradicts the analysis of our appellate function contained herein.

---

1. P.L. 1961, ch. 316.

2. P.L. 1977, ch. 632, § 2.

■ In light of these considerations, we do not consider the reasoning in *Matthews* and *Poole* sufficiently cogent to command our allegiance. Our recent cases have re-emphasized that our review over fact finding by the Commission is narrow, requiring our deference to the Commissioner's conclusions if they are supported by competent evidence. *See Wing v. Cornwall Industries*, Me., 418 A.2d 177 (1980). It would be anomalous to adhere to a supposed exception to this standard simply because the parties, for convenience, rely upon written evidence. We decline, therefore, the appellant's invitation independently to review the evidence. For the guidance of the bar, moreover, we disavow any suggestion that a trial de novo may be had on appeal in workers' compensation cases.

## II.

With our limited scope of review in mind, we now address the merits of the appeal. First, Eastern contends that Dunton's claim was barred because he did not file his petition within two years after the 1972 accident. Section 95 of the Workers' Compensation Act provided in 1972, in pertinent part:

> Any employee's claim for compensation under this Act shall be barred unless an agreement or a petition . . . shall be filed within 2 years after the date of the accident. . . . If the employee fails to file said petition within said period because of mistake of fact as to the cause and nature of the injury, he may file said petition within a reasonable time.[3]

39 M.R.S.A. § 95.

■ In *Pino v. Maplewood Packing Co.*, Me., 375 A.2d 537 (1977), we stated that the "mistake of fact" provision in section 95 contemplates "those situations where the injury is latent or its relation to the accident unperceived." Dunton testified that

before 1977 it never occurred to him that his back problems were related to the fall at Eastern. The doctors he consulted for back problems between 1972 and 1977 all testified that Dunton never mentioned a fall at work. On the basis of this testimony, the Commissioner could find that Dunton did not perceive a relationship between his back ailments and the incident at work. Therefore, his failure to file a petition within the two–year limitations period is excused by a "mistake of fact as to the cause and nature of the injury."

■ Although prior opinions of this Court refer to the reasonableness of an employee's conduct, we have not held that the mistake of fact must be a reasonable one. *See, e. g., Brackett's Case*, 126 Me. 365, 138 A. 557 (1927); *Francis v. H. Sacks and Sons*, 160 Me. 255, 203 A.2d 42 (1964). The statute requires no more than a subjective mistake of fact. As we said in *Pino*, "[t]he legislative motivation is readily apparent:–when there is 'mistake of fact as to the cause and nature of the injury', it would be unfair to bar the claim *because the employee is unaware of it*." 375 A.2d at 537 (emphasis in original).

■ Second, Eastern contends that Dunton's claim for compensation is barred by his failure to give notice within 30 days after the 1972 accident, as required by 39 M.R.S.A. § 63. Although section 63 does require that notice be given to the employer within 30 days, section 64 provided in 1972, in part:

> Want of such notice shall not be a bar to proceedings under this Act if it be shown that the employer or his agent had knowledge of the accident. Any time during which the employee . . . fails to [give notice] on account of mistake of fact, shall not be included in the 30–day period specified.[4]

---

3. A 1973 amendment substituted "injury" for "accident" in the first sentence of section 95. This change does not affect our decision.

4. As originally enacted, sections 63 and 64 contained the word "injury." That word was changed to "accident" in 1929 and changed

back to "injury" in 1973. In view of our Comment in *Fogg's Case*, 125 Me. 524, 134 A. 626 (1926), that injury is synonymous with accident, we perceive no effect that these amendments would have on our decision herein.

Dunton testified that after he fell and slid on the wet floor, his foreman came to his assistance and asked him if he was all right. Although this testimony adequately supports the Commissioner's finding that the employer's agent had knowledge of the accident, neither party was aware of any serious injury to Dunton.

Dunton relies on *Fogg's Case*, 125 Me. 524, 134 A. 626 (1926), for the proposition that it was immaterial whether or not both parties were mistaken as to the extent of Dunton's injury at the time. In 1926, however, both "knowledge" and "mistake" excused compliance with the notice requirement. By enactment in P.L. 1929, ch. 300 §§ 19 and 20, the legislature changed to the present tolling provision in cases of "mistake of fact." Eastern argues, therefore, that where it only had knowledge of an incident at its mill without any knowledge of an injury to its employee, Dunton was required to give notice within 30 days of the date when Dunton learned the cause of his back condition. Even interpreting the evidence most favorably to Dunton, we cannot narrow the period between Dr. Ballesteros' diagnosis of causation and Dunton's petition herein to less than 36 days.

We have recently said, in connection with the question of adequacy of notice:

> Two policies, expressed by different provisions of the Workers' Compensation Act, compete for application in this case. It is important that an employer be soon apprised that an injury has occurred in order that he may determine whether it is work–related ... and take steps to assure prompt medical attention and early investigation of the circumstances.... The requirement of early notice of injury affords both employer and employee a measure of protection against false or mistaken claims and contentions. On the other hand, the Act is remedial in nature and is to be so construed to accomplish its beneficent purposes and avoid incongruous or harsh results.

*Clark v. DeCoster Egg Farms*, Me., 421 A.2d 939, 942 (1980) (citations omitted). We reaffirm that the purpose of the section 63 notice requirement is to permit a prompt investigation of the circumstances and to assure prompt and adequate medical attention. *See* 3 A. Larson *Workman's Compensation Law* §§ 78.30–.32 (1976).

■ Where, as here, the employer had knowledge of the accident and the employee's mistake as to the injury extended beyond the section 95 period for filing his petition, we see no purpose to be served by the imposition of a 30–day notice requirement in addition to the section 95 "reasonable time" requirement. Little benefit would result to the employer in terms of investigation or additional medical attention from receipt of such notice. An employee must bear a substantial burden of proving mistake under section 95. We hold, therefore, that under these circumstances the petition need only be filed within a reasonable time and that the notice requirement of section 63 is no longer applicable.

Finally, Eastern contends that the Commission erred in concluding that Dunton's incapacity was causally connected to the 1972 accident. Testifying in response to a hypothetical question giving details of the 1972 accident, Dr. Ballesteros, the doctor who treated Dunton after the 1976 accident, expressed his medical opinion that both the 1972 and 1976 accidents contributed to Dunton's back condition. The appellant argues that the testimony of Dr. Ballesteros is not persuasive because he had not examined Dunton between the 1972 and the 1976 accidents. The appellant also points to the testimony of other doctors who found no disc problems before 1977.

■ Although the evidence may also support a different result, our role is limited to determining whether there is competent evidence to support the Commissioner's findings. Since the testimony of Dr. Ballesteros does provide such support, we need not inquire further. *McKenzie v. Hathaway Co.*, Me., 415 A.2d 252 (1980).

The decision of the Workers' Compensation Commission reveals no errors of law and no factual findings unsupported by competent evidence. This Court, therefore, will not disturb the Commissioner's decision.

The entry is:

Pro forma judgment affirmed.

It is ordered that Eastern Fine Paper pay to the employee an allowance of $550 for his counsel fees plus his reasonable out–of–pocket expenses for this appeal.

All concurring.