## LEE ACADEMY EDUCATION ASSOCIATION

v.

## Lee ACADEMY and Maine Labor Relations Board.

Supreme Judicial Court of Maine.

Argued Jan. 17, 1989.

Decided March 30, 1989.

Shawn C. Keenan (orally), Maine Teachers Ass'n, Augusta, for plaintiff.

M. Wayne Jacobs (orally), Maine Labor Relations Bd., Augusta, Linda McGill (orally), Perkins, Thompson, Hinckley & Keddy, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

Plaintiff Lee Academy Education Association, a local union of the Maine Teachers Association, seeks to organize the faculty of defendant Lee Academy. Because the Academy educates public high school students under contract with School Administrative District No. 30, the union contends that the teachers at the Academy are indirectly employed by SAD 30 and are entitled to the protection of the Municipal Public Employees Labor Relations Law, 26 M.R.S. A. §§ 962–974 (1988). Reversing a preliminary decision by one of its hearing examiners, the Maine Labor Relations Board (MLRB) held that the Academy is not a "public employer" within the meaning of the Labor Relations Law and dismissed the union's petition for a bargaining unit deter-

mination. The Superior Court (Kennebec County; *Brody, C.J.*) affirmed. We agree with the MLRB that the Academy, despite its contract with SAD 30, has continued to function independently as a private school, and we affirm.

School Administrative District No. 30, comprising the Town of Lee and four other municipalities in eastern Penobscot County, was established by P. & S.L.1963, ch. 90. That enabling legislation expressly provided that SAD 30 could contract for Lee Academy, a private school incorporated in 1845, to serve as the high school for the District. Under that contractual arrangement, the Academy is obligated to accept all high school students residing within the territory encompassed by SAD 30. Those students now constitute between 40 and 50 percent of the Academy's student body, and SAD 30 pays their tuition to the Academy with public funds at the rate specified by state statute, 20–A M.R.S.A. § 5806 (Supp.1988). SAD 30 has been represented on the Academy's governing boards for over a decade; presently the chairman of SAD 30's board is an *ex officio* voting member of the Academy's eight-member board of directors, and that chairman and one other SAD 30 board member are two of the 30 trustees of the Academy. The union argues that a symbiotic and interdependent relationship between the District and the Academy has evolved over the quarter century since SAD 30 was created.

Taking the position that this relationship subjects the Academy to the provisions of the Municipal Public Employees Labor Relations Law, the union filed a petition for bargaining unit determination under MLRB Rule 1.03. *See* 26 M.R.S.A. § 966. Bifurcating the unit determination proceeding, the MLRB hearing examiner dealt first with the threshold question whether the Academy was a public employer at all. He ruled "that the Academy is subject to the

public employers' 'right to control,' " and is therefore subject to the jurisdiction of the MLRB. The Academy appealed that decision to the MLRB pursuant to 26 M.R.S.A. § 968(4).

With the employee representative dissenting, the MLRB sustained the Academy's appeal and dismissed the union's petition, holding that the union had "not met its burden of establishing that the Academy is either a public employer or 'acting on behalf of' a public employer within the meaning of the Municipal Public Employees Labor Relations Law." [1] The MLRB found that the Academy's role in providing services for SAD 30 is properly analogized to that of an independent contractor, not that of a servant. The union filed a complaint seeking judicial review under M.R. Civ.P. 80B or alternatively under M.R.Civ. P.80C, and the Superior Court affirmed the decision of the MLRB.

At the center of the union's appeal is the MLRB's construction of the governing statute. The Academy is subject to bargaining unit determination under the Municipal Public Employees Labor Relations Law only if it is a "public employer." 26 M.R.S. A. §§ 961, 966. As here relevant, that statute defines a public employer as "any officer, board, commission, council, committee or other persons or body *acting on behalf of* any municipality or ... school ... district...." 26 M.R.S.A. § 962(7) (emphasis added).

As the MLRB and the hearing examiner both recognized, the starting point in any analysis of the "acting on behalf of" standard is our decision in *Baker Bus Service, Inc. v. Keith,* 416 A.2d 727 (Me.1980), in which the City of Augusta, in the course of an ongoing labor dispute, attempted to privatize its school bus service. We held that an ostensibly private employer is "public" for collective bargaining purposes if it is an

---

**1.** We find no merit in the union's argument that the MLRB, in ruling that the Academy is not a public employer, violated the statutory mandate that its decision "shall either affirm or modify the ruling or determination" of its hearing examiner. 26 M.R.S.A. § 968(4) (1988). The power to reverse is inherent in the nature of appellate review. The union's construction of the statutory language would provoke esoteric litigation over whether a successful appeal to the MLRB is a permissible "modification" or an *ultra vires* "reversal." What the MLRB has done in building on the base of the hearing examiner's findings, but reaching a different conclusion, is fully in accord with everyday meaning of "modify."

"agent-servant" of a public entity rather than an "agent-independent contractor." *Id.* at 730. Employees whose work ultimately benefits the public are thus regarded as "public employees" under 26 M.R.S.A. § 962(6) when their immediate employer, if a natural person, would itself be a common law employee of the public entity. The test we applied in determining that the employer in *Baker Bus* "actually was, for all practical purposes, the *alter ego*" of the City of Augusta was whether it was "subject to the City's control or right of control." 416 A.2d at 731.

*Baker Bus* held further that the Municipal Public Employees Labor Relations Law mandates a high level of judicial deference to the MLRB's decision whether that control or right to control is present. That question typically arises, as it did both here and in *Baker Bus,* in the context of a petition for a bargaining unit determination under 26 M.R.S.A. § 966. The MLRB's decision in a unit determination case "shall be subject to review by the Superior Court in the manner specified in section 972," the section governing judicial review of labor arbitration. *Id.* § 968(4). The "manner specified" includes the standard of review, and under section 972 the MLRB's "binding determination . . . in the absence of fraud, upon all questions of fact shall be final." *See Baker Bus Service, Inc. v. Keith,* 416 A.2d at 729. *Cf.* 39 M.R.S.A. § 99 (Pamph. 1988); *Dunton v. Eastern Fine Paper Co.,* 423 A.2d 512, 514 (Me.1980) ("final in absence of fraud" standard in workers' compensation appeals).

Although the case at bar is factually quite different from *Baker Bus,* the governing legal principles are the same: the MLRB's task here was to determine whether SAD 30 (or SAD 30 together with other quasi-municipal entities) has "control or the right to control" over the Academy; and the MLRB's factual findings are to be taken by a reviewing court as "final in the absence of fraud." The essence of the union's case in this appeal is that *Baker Bus* should be overruled or confined narrowly to its facts on both of those points. Its arguments are unpersuasive.

Although the union raises the fear that applying the "final in the absence of fraud" standard in circumstances such as these gives the MLRB free rein to determine its own jurisdiction, there is no reason for any unusual judicial scrutiny of the MLRB's factfinding merely because the MLRB's own jurisdiction is at stake in the proceedings. The factual questions involved here fall well within the agency's expertise, and the decision was subject to full judicial review for any error of law, 26 M.R.S.A. § 972, including in particular any erroneous application of the facts found to jurisdictional issues. Even if, as the union contends, it is anomalous that courts apply a different standard of review to the same jurisdictional issue when it instead arises in a prohibited practices proceeding, that anomaly is for the legislature to correct. We held in *Baker Bus,* which involved the identical jurisdictional question, that the structure of section 968 "strongly indicates that the legislature truly meant the Board's findings of fact in unit determination proceedings to be accorded more finality on review than its findings in prohibited practices cases." 416 A.2d at 730. Finally, the union's further argument, that "final in the absence of fraud" judicial review of the MLRB is incompatible with its appellate role, misconceives the statutory two-stage procedure within the administrative agency. The appeal provision of the statute governs the relationship between the judiciary as a whole and the agency as a whole. It is the MLRB's final decision that the Superior Court reviews. The deferential standard of review prescribed by the statute applies not to the initial decision of the MLRB hearing examiner but to the final agency action of the MLRB, a body with factfinding responsibilities and expertise of its own. *See* 26 M.R.S.A. § 968(6).

The union's attack upon the MLRB's use of the "control or right to control" test laid down by *Baker Bus* is essentially a policy argument: that the benefits of the Municipal Public Employees Labor Relations Law should be disseminated as widely as possible and that students at the Academy should have the same protection against strikes by Academy employees as do stu-

dents at public high schools. That policy argument proves too much. The legislature is most unlikely to have intended to subject the employee relations of every private business that contracts with a school district or municipality to regulation under the Municipal Public Employees Labor Relations Law. We believe the *Baker Bus* test draws the proper line as well as it can be drawn. The test looks beyond the legal form of the employer-employee relationship to its real substance. It requires a determination whether a municipal entity exercises or has the legal right to exercise such control over the private contractor that the latter's employees are in practical reality public employees. Only then is there a clear policy reason for the legislature to step in with special regulation of the labor relations of that employee group. Furthermore, the "control or right to control" test has meshed effectively with federal labor law, and it has provided a workable standard for the decisions of the MLRB.[2] The union has come forth with no persuasive reason for us to conclude in 1989 that we erred in 1980 in reading the legislative intent in defining when a private organization becomes a public employer.

On appeal in the case at bar, we find no error in the MLRB's application of the *Baker Bus* test to the circumstances of Lee Academy. The evidence fully supports the MLRB decision that the Academy continues to function as a private school free of the control or right to control of SAD 30 and other municipal entities.

To begin with, more than half the students at the Academy do not come from SAD 30, and some 20% of the students are boarding students. The Academy owns its own campus and physical plant and has maintained a $1.14 million endowment. Some 70% of its operating budget comes from sources other than SAD 30 tuitions. More than two dozen of the Academy's trustees do not come from the SAD 30 board, and no one contends that they are mere figureheads for the two who do. Its contract with SAD 30 does limit the Academy's right to accept and reject students from that area on an individual basis, but the Academy retains the ultimate right of control even as to the portion of its student body admitted under that contract because it has no legal obligation to continue the arrangement after the present contract expires.

The significance of "control or right to control" is illustrated by the sharp contrast between the relationship of private contractor to public entity in the case at bar and the relationship of private contractor to public entity in *Baker Bus*. The substantial resources and independent operations of Lee Academy clearly distinguish it from Baker Bus Service, Inc. SAD 30 has none of the elements of control over the operations of Lee Academy that the City of Augusta retained and in fact exercised over Baker Bus:

> [Baker Bus Service, Inc.] was not required to furnish any of the necessary equipment, supplies, or materials when it agreed to operate the school bus system for Augusta. Nor was [it] required to make more than a minimal capital investment. The City's retained powers over routes and the hiring of personnel establishes that [Baker Bus] could exercise little independent judgment in carrying out the contract.

*Baker Bus Service, Inc. v. Keith*, 416 A.2d at 731.

The exercise of Lee Academy's independent educational judgment, on the other hand, is precisely what SAD 30 has contracted to obtain. The students from SAD 30 study with the same teachers, in the same classes, as do the other students. The operations of Lee Academy, unlike those of Baker Bus, can in no way be compartmentalized into "public" and "private" components. It is true that most of the students at the Academy, even from outside SAD 30, have made arrangements for their home school districts to pay their tuition, but the Academy, far from being the "servant" or "alter ego" of those other

---

**2.** *See, e.g., Erskine Academy Teachers Ass'n v. Erskine Academy Bd. of Trustees,* No. 79–06 (MLRB, Mar. 27, 1979); *Portland Public Library* and *Portland Teachers Ass'n,* No. 81–A–02 (MLRB, June 18, 1981), *aff'd,* No. CV–81–884 (Me.Super.Ct., Cum.Cty., Aug. 22, 1983).

districts, "competes" with the public high schools of those districts in the recruitment of students. The parties so stipulated before the MLRB.

Those tuition payments, when added to the SAD 30 payments, account for almost three quarters of the Academy's operating budget, and an additional 13% from various other sources can ultimately be traced to tax revenues. That fact suggests that the Academy might face hard times if its public funding were to decrease substantially, but the dependence of many private contractors on government contracts is a fact of modern economic life, embodying no legal right of control. On the record before us, the relationship between Lee Academy and the public school districts is a classic instance of an independent private contractor doing business with governmental entities.

The entry is:

Judgment affirmed.

All concurring.