**Harold S. BRAWN**

v.

**ST. REGIS PAPER COMPANY.**

Supreme Judicial Court of Maine.

Argued May 12, 1981.

Decided June 11, 1981.

**844**

Fellows, Kee & Nesbitt, Samuel Nesbitt, Jr. (orally), Bucksport, for plaintiff.

Mitchell & Stearns, Kevin M. Cuddy (orally), Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, NICHOLS, ROBERTS and CARTER, JJ.

CARTER, Justice.

Harold Brawn appeals from the pro forma decree affirming the denial by the Workers' Compensation Commission of his petition for compensation for an occupational disease. We affirm the judgment.

Brawn's petition sought compensation for emphysema allegedly caused by inhaling paper dust during his thirty-eight years of employment in the mill of the respondent, St. Regis Paper Company. The Commission denied the petition and found:

> Harold S. Brawn suffers from chronic obstructive pulmonary disease which probably is a combination of asthma and emphysema. The etiology of this condition is not established by the evidence. . . .

> Although the exposure to dust and chemicals which are characteristic of the trades at which Mr. Brawn worked for many years as an employee of St. Regis Paper Co., probably exacerbated the underlying pulmonary deficiencies, we do not think that the provisions of § 185 of the Occupational Disease Law relating to apportionment of disability apply in this case because as stated above, the evidence does not establish that it is more probable than not that the underling [sic] condition is an occupational disease.

On appeal, Brawn argues that he is entitled to compensation for occupational disease because the symptoms of his pulmonary disease were made worse by the conditions of his employment. As a matter of law, this argument is not supported by the statutory provisions providing compensation for occupational disease. Under 39 M.R. S.A. § 182,[1] compensation for incapacity

---

1. Section 182 provides:

 Except as otherwise specifically provided, incapacity to work or death of an employee *arising out* of and in the course of the employment, and resulting from an occupational disease, shall be treated as the happening of a personal injury by accident arising out of and in the course of the employment, within the meaning of the Workers' Compensation Act, and all the provisions of that Act shall apply to such occupational diseases. This law shall apply only to cases in which the last exposure to an occupational disease in an occupation subject to the hazards of such

resulting from an occupational disease is determined, except as otherwise provided, under the same rules applicable to personal injuries. Section 182 does not come to bear, however, until the employee first meets his burden of proving that he has an occupational disease, as that term is defined in 39 M.R.S.A. § 183. Section 183 defines "occupational disease" as *"only* a disease which is *due to* causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment and which *arises out of* and in the course of employment" (emphasis added).[2] Under this definition, the Commission cannot conclude that an occupational disease exists unless it finds that conditions of employment are at least one factor contributing causally to the development of the disease. Such causal contribution to the disease process is to be distinguished from a factual situation in which the conditions of employment merely aggravate, or worsen, the symptoms of a pre-existing disease.

 We read the Commission's finding that "the etiology of this condition is not established" as a finding that the evidence fails to establish that it is more probable than not that the petitioner's working conditions contributed at all to the evolution of the disease process.[3] If that finding was supported by competent evidence, the Commission properly concluded that Brawn's pulmonary disease was not an occupational disease within the meaning of section 183 and that Brawn was therefore not entitled to compensation under section 182. Having found no occupational disease, the Commission was also correct in concluding that it had no occasion for applying 39 M.R.S.A. § 185, which provides for apportionment between an occupational disease and other, noncompensable, causes of death or incapacity.[4]

From our review of the record, we conclude that competent evidence supports the Commission's factual finding that working conditions were not a cause of Brawn's pulmonary disease. Dr. Fisher, for example, stated that it would be "pure speculation" to try to determine the relative ill effects of environmental exposure, genetic susceptibility, cigarette smoking, and other unknown factors. Dr. Fisher and Dr. McCue both stated that they knew of no research data linking paper dust with lung damage. None of the five doctors whose opinions were presented to the Commission was able to draw a causal connection between Brawn's working conditions and the origin of his disease.

We disagree with the employee's contention that entitlement to compensation necessarily follows from the Commissioner's statement that conditions of his employment "probably exacerbated the underlying pulmonary deficiencies." The Commissioner apparently made this statement to indi-

disease occurred in this State and subsequent to January 1, 1946.

2. This was the wording of section 183 on August 11, 1974, the date of Brawn's last exposure to the employment conditions at St. Regis. A 1975 amendment deleted the words "and peculiar to."

3. Webster's New World Dictionary defines "etiology" as the "science or theory of the causes or origins of diseases." The Commissioner's choice of this word indicates that he was referring to the causation of the disease.

4. Section 185 provides:
 Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or the death or incapacity from any other cause, not itself compensable is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease, the compensation payable shall be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the incapacity or death as such occupational disease, as a causative factor, bears to all the causes of such incapacity or death, such reduction in compensation to be effected by reducing the number of weekly or monthly payments or the amounts of such payments, as under the circumstances of the particular case may be for the best interest of the claimant or claimants.

 Since the Commission properly found that no occupational disease existed, we still have no occasion for deciding whether the meaning of section 185 has been affected by changes in the statutory definition of "occupational disease." *See McKenzie v. C. F. Hathaway Co.,* Me., 415 A.2d 252, 254 n.4 (1980).

cate what significance he attached to evidence that Brawn's condition was "aggravated" by his dusty working environment. We read this statement as a recognition that work conditions had some adverse effect on Brawn's symptoms even though they did not originally cause or contribute to causation of the underlying disease. While perhaps not necessary to the Commission's decision, the reference to "exacerbation" was not inconsistent with the ultimate factual finding that the etiology of Brawn's disease had not been established.

The employee bears the burden of proving entitlement to workers' compensation and this record supports the Commission's finding that the burden was not met. *See McKenzie v. C. F. Hathaway Co.*, Me., 415 A.2d 252 (1980). Since the Commission's factual findings are supported by competent evidence in the record and because the Commission made no error in applying the law to those findings, we affirm the judgment. *Dunton v. Eastern Fine Paper Company*, Me., 423 A.2d 512, 518 (1980).

The entry is:

Pro forma judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

All concurring.