**Louis A. LaCROIX**

v.

**NEW ENGLAND GROUP MAREMONT CORPORATION.**

Supreme Judicial Court of Maine.

Argued Jan. 12, 1981.

Decided Jan. 28, 1982.

---

Glassman, Beagle & Ridge, C. Alan Beagle (orally), Portland, for plaintiff.

Richardson, Tyler & Troubh, Ronald D. Russell, Kevin Gillis (orally), David O'Brien, Portland, for defendant.

Before McKUSICK, C.J., and WERNICK *, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

Louis A. LaCroix's Petition for Award of Compensation for loss of hearing under The Occupational Disease Law, 39 M.R.S.A. §§ 181–195, was denied by the Workers' Compensation Commission. From a pro forma decree affirming that denial LaCroix brings this appeal. We affirm the judgment below.

After forty years employment with New England Group Maremont Corporation (Maremont), LaCroix retired at age 62 on September 30, 1977. During his last thirty-seven years with Maremont he worked with automatic screw machines, mainly as a rig-up man. The automatic screw machines were located in one area in Maremont's plant.

Since 1973 Maremont has measured the noise level in the automatic screw machine area at least annually, and the noise levels in the plant have been measured for compliance with standards set pursuant to the Occupational Safety and Health Act (OSHA). The maximum allowable noise level under OSHA standards for employees exposed for eight hours daily is ninety decibels. This level is related to the level at which irreparable ear damage occurs. While other areas in Maremont's plant have been cited for exceeding OSHA noise level standards, the automatic screw machine area has never been so cited.

Rene Paquette, who worked in the automatic screw machine area at Maremont for thirty-eight years, testified that there was not much difference in the noise level there between the past few years and earlier times. LaCroix testified that in his experience the only attempt made to lessen the noise level in the area was ineffective. LaCroix introduced no evidence of actual noise level measurements performed at Maremont; he relied upon surveys indicating that sound levels of ninety decibels or higher were commonly found in automatic screw machine areas, and upon subjective employee descriptions of the noise level at Maremont.

* WERNICK, J., sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

Dr. Marvin Adams, an ear, nose and throat specialist, diagnosed LaCroix as suffering from a bilateral sensorineural hearing loss. Three separate hearing examinations were conducted on LaCroix. The results of all three were examined by Dr. Adams. He testified that LaCroix's hearing loss fell within the range of average hearing loss for a 62-year-old person caused by age (such an age-induced hearing impairment is known as "presbycusis"). Dr. Adams conceded that looking at the results of the hearing examinations alone, he could not say whether LaCroix had suffered an occupationally-induced or merely an age-induced hearing loss. However, given a history of close to forty years employment in an environment with noise levels of ninety to one hundred decibels, Dr. Adams stated that to a medical probability LaCroix's hearing loss could be partially related to his employment. On cross-examination Dr. Adams was asked to state the basis for his estimate that the noise level at Maremont in the automatic screw machine area was ninety to one hundred decibels. He replied:

> That's an estimate—there have been tests that have been done and, in fact, that is the decibel level of this machine, but I think one could estimate what it would be approximately from comparing it to other sources of noise that you encounter, such as shipyards and so forth. If it had been much louder, it would be impossible for anyone to work in it, because of pain to the ears; and, if it was much less, it wouldn't have any effect on the hearing mechanism, so this is the ball park of loud noise.

LaCroix introduced into evidence a section of a learned treatise stating that "[i]f the highest frequencies are at a more normal hearing level than the lower ones, the cause [of the hearing loss] is not likely to be presbycusis ...." Two of the hearing examinations conducted on LaCroix, including Dr. Adams' examination, indicate that LaCroix's hearing in one or both ears is closer to normal levels at the higher frequency of 8,000 hertz than at the lower frequencies of 6,000 or 4,000 hertz (that is, LaCroix is able to hear certain high frequency sounds better than he can hear certain lower frequency sounds).

 The Commissioner found that LaCroix failed to meet his burden of proving a causal connection between his hearing loss and his work experience, i.e., the hearing loss was not proven to have arisen out of LaCroix's employment.[1] Because LaCroix did not request that the Commissioner make further findings of fact or conclusions of law pursuant to 39 M.R.S.A. § 99, we must treat the Commissioner "as having made all factual determinations which could, in accordance with correct legal concepts, support his decision, testing the assumed findings by the clearly erroneous standard." *Timberlake v. Frigon & Frigon,* Me., 438 A.2d 1294, 1295 (1982). LaCroix had the burden of proof upon the factual question of causal connection between his hearing loss and his employment. *See Brawn v. St. Regis Paper Co.,* Me., 430 A.2d 843, 844–45 (1981); cf. *Justard v. Oxford Paper Co.,* Me., 431 A.2d 1309, 1311 (1981) (decided under Workers' Compensation Act).

 In the instant case, Dr. Adams' opinion that LaCroix's hearing loss was in part caused by conditions of his employment was based upon the assumption that LaCroix was routinely exposed to noise levels of ninety to one hundred decibels. Dr. Adams noted that exposure to lower noise levels would not have any effect on the hearing mechanism, and there was evidence that the OSHA standard of ninety decibels was re-

---

1. Title 39 M.R.S.A. § 193 provides rules for determining eligibility for compensation "[i]n case of loss of hearing resulting from occupational disease ...." Section 193(1) defines "occupational hearing loss" as "a sensorineural loss of hearing in one or both ears *due to* prolonged exposure to injurious noise in employment." (Emphasis added). Title 39 M.R.S.A. § 183 defines "occupational disease" in part as a disease which *arises out of* employment. Thus, it is clear that a hearing loss is compensable only if conditions of employment are at least one factor contributing causally to the loss. *See Brawn v. St. Regis Paper Co.,* Me., 430 A.2d 843, 845 (1981).

lated to the level at which irreparable ear damage occurs. LaCroix introduced no evidence to show that exposure to a noise level below ninety decibels would cause loss of hearing. The evidence did not compel the Commissioner to find that LaCroix met his burden of proving exposure to noise levels at Maremont of at least ninety decibels; therefore, the Commissioner was justified in rejecting Dr. Adams' opinion that LaCroix's hearing loss was partially related to his employment.[2] Supporting this assumed rationale is the evidence of noise level testing which revealed no violations of OSHA's ninety decibel level standard in the automatic screw machine area, and the evidence indicating that the noise level in that area has remained relatively constant over the years. While there was evidence in the record which would support a finding of a ninety decibel noise level in Maremont's automatic screw machine area, we cannot say that on this record the Commissioner was compelled to make such a finding. *See Justard v. Oxford Paper Co.*, Me., 431 A.2d 1309, 1313 (1981); *Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512, 518 (1980).

Based upon the results of the hearing examinations alone, Dr. Adams testified that it would be impossible to say whether LaCroix's hearing loss was occupationally induced or merely a normal loss due to aging. Especially in light of our discussion above, this evidence supports the Commissioner's conclusion that LaCroix failed to prove a causal connection between his hearing loss and his employment at Maremont. While a learned treatise supports LaCroix's position with regard to the results of the hearing examinations, the Commissioner was entitled to find Dr. Adams' expert medical testimony to be more persuasive. *See Leo v. American Hoist & Derrick Co.*, Me., 438 A.2d 917, 920–921 (1981).

The entry is:

Judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.

---

**2.** We do not intend to intimate that proof of a ninety-decibel noise level was *necessary* in order for LaCroix to prevail. We point to that failure of proof as justification for the Commissioner's rejection of Dr. Adams' opinion testimony. *Cf. In re Estate of Bedwell*, 104 Ariz. 443, 445, 454 P.2d 985, 987 (1969).